2 F.3d 519
 1994 A.M.C. 583
 Brad J. GORMAN, As Owner of a 1990 Wellcraft Scarab-Viper,
New Jersey Registration No. 0364FO for Exoneration
from or Limitation of Liability, in a
Cause of Action Civil and
Maritime, Appellant,
v.
Robert L. CERASIA, Individually and as General Administrator
and Administrator Ad Prosequendum of the Estates of Robert
J. Cerasia and Michael C. Cerasia, Deceased; Carole
Cerasia, Individually; Anthony Dinallo, Individually and as
General Administrator of the Estate of Robert J. Dinallo, Deceased.
 No. 92-5601.
 United States Court of Appeals,
Third Circuit.
 Argued July 8, 1993.
Decided Aug. 16, 1993.
As Amended Sept. 8, 1993.
 
 George A. Smith (argued), James S. McMahon, Bigham, Englar, Jones & Houston, Newark, NJ, for appellant.
 Steven P. Benenson (argued), Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for appellees.
 Before: SLOVITER, Chief Judge, NYGAARD and WEIS, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Chief Judge.
 
 
 1
 In this interlocutory appeal in an admiralty case, Brad J. Gorman appeals from the order of the district court vacating portions of its earlier stay and permitting appellees Robert L. Cerasia and Carole Cerasia to proceed with their state court tort action against him. The action was instituted by the Cerasias after their two teenaged sons were killed when the boat in which they were passengers collided with a boat owned and operated by Gorman. Gorman then filed a complaint in the United States District Court for the District of New Jersey for exoneration from or limitation of liability pursuant to the Limited Liability Act, 46 U.S.C. app. Secs. 181-196 (1988). In accordance with the provisions of the Act, the district court enjoined the state court action pending resolution of the underlying admiralty proceeding, but after the state plaintiffs filed stipulations recognizing Gorman's right to litigate the issue of limited liability in the admiralty proceeding, the court partially lifted the stay. It is from this modification of the stay that Gorman appeals.
 
 I.
 Facts and Procedural Posture
 
 2
 On the evening of August 10, 1991, Gorman was operating a 1990 Wellcraft Scarab-Viper power vessel in Barnegat Bay off the coast of New Jersey. At approximately 10:00 P.M. the Wellcraft passed a northbound vessel owned by Steven Pyskaty. Immediately thereafter, the Wellcraft and a sixteen-foot 1985 Boston Whaler Montauk, owned by appellee Anthony Dinallo and operated by his son Robert, collided. Also on board the Dinallo boat were two teenaged brothers, Michael and Robert J. Cerasia. All three individuals drowned as a result of the collision.
 
 
 3
 On February 7, 1992, Robert L. and Carole Cerasia, the parents of the decedents, filed a tort action against Gorman, Anthony Dinallo, and Pyskaty in the Superior Court of Essex County, New Jersey, asserting that the defendants acted negligently and were jointly and severally liable for the accident. Robert Cerasia brought suit in his individual capacity and as administrator of the decedents' estates, seeking damages under the New Jersey Wrongful Death Act, N.J.Stat.Ann. Sec. 2A:31-1 to 2A:31-6 (West 1987), for pecuniary loss resulting from the death of the two boys. He also asserted a claim under the New Jersey Survival Statute, N.J.Stat.Ann. Sec. 2A:15-3 (West 1987), for the personal injuries and pain suffered by his sons before their death. Carole Cerasia sued in her individual capacity, asserting a per quod claim for the loss of her children's company and services.[1]
 
 
 4
 Shortly after the Cerasias filed their complaint, Dinallo cross-claimed in the state action against Gorman for contribution under the New Jersey Tortfeasors Contribution Law, N.J.Stat.Ann. Sec. 2A:53A-1 (West 1987). During the pendency of this appeal, Pyskaty also filed a claim for contribution against Gorman in the state action.
 
 
 5
 After being served with the Cerasias' summons and complaint in the state proceeding, Gorman filed a timely complaint in the district court seeking exoneration from or limitation of his liability pursuant to the Limited Liability Act, 46 U.S.C. app. Secs. 181-196 (1988). The Act provides that the liability of a shipowner for any damage arising from a maritime accident which occurs "without the privity or knowledge of such owner" shall not exceed the value of the vessel and its freight. Id. Sec. 183(a). Gorman denied that the collision was due to any fault on his part and asserted that he had no privity or knowledge of the events surrounding the accident. App. at 68. He also filed an ad interim stipulation for value in the amount of $70,000 which reflected the total value of the Wellcraft and its cargo.
 
 
 6
 On May 22, 1992, the district court, as authorized by 46 U.S.C. app. Sec. 185 and Fed.R.Civ.P. Supplemental Rule F(3), enjoined "the commencement or continuation of prosecution of any and all suits, actions, or proceedings" against Gorman arising out of the 1991 boating accident and directed all those asserting claims against him to file them with the court by July 1, 1992. App. at 64. Thereafter, the Cerasias filed a claim in the district court for damages caused by the death of their two sons. Dinallo filed a claim against Gorman for contribution, and also requested attorneys' fees and costs.
 
 
 7
 On June 30, 1992, the Cerasias moved the district court to vacate its original stay order and to permit their claims against Gorman to proceed in state court on the condition that they file protective stipulations acknowledging Gorman's right to litigate all issues relating to limitation of liability in the admiralty proceeding. Gorman objected on the ground that the district court had exclusive jurisdiction over all issues arising from the boating mishap.
 
 
 8
 In a letter opinion filed on September 30, 1992, the district court granted the motion to lift the stay. The court stated that "[b]ecause the present circumstances demonstrate multiple claimants to a fund ($70,000) which is not adequate to satisfy all such claims if they are successful, the Court is not required to lift the stay halting the [state] action. However, the Court is empowered to do so if, in the exercise of its discretion, the plaintiff is not deprived of the opportunity to litigate in this forum any entitlement which he may have to the benefits of the Limitation of Liability Act." App. at 140.[2] The court concluded that the following protective stipulations proffered by the Cerasias and agreed to by Dinallo adequately preserved Gorman's rights under the Act:
 
 
 9
 (1) Plaintiff Gorman has the right to litigate in this Court all issues relating to limitation of liability under the federal Limitation of Liability Act;
 
 
 10
 (2) The parties will not seek in any state court action any ruling on Gorman's right to limitation of liability;
 
 
 11
 (3) In the event that a judgment is recovered in any state court action against Gorman that exceeds the fund representing the value of plaintiff's vessel, neither party will seek to enforce the judgment against Gorman pending adjudication of the Limitation of Liability action in this Court; and
 
 
 12
 (4) The parties stipulate that the appraisal submitted by Gorman [$70,000] accurately reflects the fair market value of his vessel.
 
 
 13
 App. at 143-44. The district court also directed a United States Magistrate Judge to "provid[e] for coordination and joint use of discovery in both [the state and federal] actions in order to minimize the time and expenses of pretrial preparation." App. at 142.
 
 
 14
 Gorman appeals from the district court's order permitting the state action to proceed subject to these four stipulations. On March 26, 1993, while this appeal was pending, Pyskaty also filed a claim for contribution, attorneys' fees, and costs in the limitation proceeding, and in addition Pyskaty claimed the benefit of the federal statute limiting his liability. The district court, with Gorman's consent, permitted Pyskaty to file his claim out of time.
 
 II.
 Appellate Jurisdiction
 
 15
 The Cerasias have moved to dismiss Gorman's appeal for lack of jurisdiction. However, as numerous courts have held, "[t]he denial, modification, or dissolution of an injunction in a limitation proceeding is appealable as a matter of right under 28 U.S.C. Sec. 1292(a)(1)." In re Bowoon Sangsa Co., 720 F.2d 595, 597 (9th Cir.1983); see S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co., 678 F.2d 636, 641-42 n. 10 (6th Cir.1982) (order modifying previously entered stay of state court proceedings in admiralty limitation action appealable under 28 U.S.C. Sec. 1292(a)(1)); Pershing Auto Rentals, Inc. v. Gaffney, 279 F.2d 546, 547-48 (5th Cir.1960) (same). It follows that we have jurisdiction to hear Gorman's appeal.
 
 III.
 Standard of Review
 
 16
 The district court has discretion to vacate a previously-issued stay in a limitation proceeding. See Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931); Newton v. Shipman, 718 F.2d 959, 961 (9th Cir.1983). However, where a shipowner demonstrates that his or her right to limit liability would be prejudiced, the court's lifting of the stay constitutes an abuse of discretion. See Universal Towing Co. v. Barrale, 595 F.2d 414, 420 (8th Cir.1979); S & E Shipping, 678 F.2d at 647 (Cornelia G. Kennedy, J., concurring).
 
 IV.
 Applicable Legal Principles
 
 17
 The Limited Liability Act provides that the liability of a shipowner incurred as a result of a maritime accident "without the privity or knowledge of such owner ... shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C. app. Sec. 183(a).[3] As the Fifth Circuit has explained, "[i]n the typical situation of a corporate owned ocean vessel the privity and knowledge scrutiny focuses in on whether the shore-based high-leveled management is aware (or should have been) of the likelihood of the occurrence happening after the ship is underweigh [sic]." Tittle v. Aldacosta, 544 F.2d 752, 756 (5th Cir.1977) (citations omitted).
 
 
 18
 If a shipowner facing potential liability for a maritime accident files a complaint seeking protection under the Act, the district court is authorized to stay all proceedings against the owner, 46 U.S.C. app. Sec. 185; see Fed.R.Civ.P. Supplemental Rule F(3), and to direct all potential claimants to file their claims against the shipowner in the district court within a specified period of time, Fed.R.Civ.P. Supplemental Rule F(4); see Universal Towing, 595 F.2d at 417.
 
 
 19
 Thereafter, in a proceeding known as a concursus, the district court, sitting in admiralty without a jury, determines " 'whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the [limitation] fund should be distributed.' " In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 755 (2d Cir.1988) (quoting Universal Towing, 595 F.2d at 417). In this way the court can supervise the "marshalling of assets [and] the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." Id. (quotation omitted).[4]
 
 
 20
 Although "[f]ederal courts have exclusive admiralty jurisdiction of [limitation of liability] suits brought under the Act," Magnolia Marine Transport Co. v. Laplace Towing Corp., 964 F.2d 1571, 1575 (5th Cir.1992), this creates a tension with the "saving[s] to suitors" clause of 28 U.S.C. Sec. 1333 (1988), which preserves the right to a jury trial.[5] As the Second Circuit has explained:
 
 
 21
 In exercising th[e] equitable power [conferred by the Act], the admiralty court must necessarily deny the claimants their right to pursue common law claims before a jury. There is no right to a jury in actions instituted in admiralty, and the claimants are enjoined from pursuing common law actions in other forums. Such a result is in direct conflict with the promise of 28 U.S.C. Sec. 1333 that the exercise of admiralty jurisdiction will not deny suitors the right to common law remedies.
 
 
 22
 Dammers, 836 F.2d at 755 (citations omitted).
 
 
 23
 In reconciling the "recurring and inherent conflict" between these two statutory mandates, id. at 754, courts have created two exceptions to the admiralty court's exclusive jurisdiction over limitation proceedings. The first exception arises if the value of the vessel and its cargo exceeds the aggregate of the total number of claims filed against the owner. See Lake Tankers Corp. v. Henn, 354 U.S. 147, 152, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246 (1957). In such a situation "a concursus is unnecessary because the claimants need not compete among themselves for larger portions of a limited fund." In re Midland Enters., Inc., 886 F.2d 812, 814 (6th Cir.1989) (quotation omitted).
 
 
 24
 The second exception occurs when a single claimant brings an action against the shipowner seeking damages in excess of the value of the vessel. In such a case, the district court must lift the stay provided that the claimant stipulates that the admiralty court has exclusive jurisdiction to determine all issues concerning the owner's limitation of liability under the Act. See, e.g., Ex Parte Green, 286 U.S. 437, 438-40, 52 S.Ct. 602, 602-03, 76 L.Ed. 1212 (1932); Langnes, 282 U.S. at 540-44, 51 S.Ct. at 246-48; Helena Marine Serv., Inc. v. Sioux City, 564 F.2d 15, 18 (8th Cir.1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978). Specifically, the claimant must waive any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in the state court, and concede the shipowner's right to litigate all issues relating to limitation in the federal limitation proceeding. Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty Sec. 10-19, at 871 (2d ed. 1975). The necessity of these two stipulations has been accepted by federal courts for over half a century and is now beyond dispute.[6]
 
 
 25
 These stipulations provide insufficient protection to a shipowner, however, where there are multiple claimants to a fund that is inadequate to satisfy all claims. In such cases, courts have not permitted state tort actions against the vessel owner to proceed, reasoning that the claimants have an interest in maximizing their own claims and in minimizing the claims of others. See Universal Towing, 595 F.2d at 418. In this context, a concursus "prevents claimants from securing judgments in various courts that, in the aggregate, exceed the fund and, thus, assures the owner that he will not be required to pay damages in excess of the statutory limits." Id. As we explained in In re Central R.R. Co. of New Jersey, 469 F.2d 857, 862 (3d Cir.1972), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973), "[t]he exclusive jurisdiction of an admiralty court in a multiple-claims-inadequate-fund limitation proceeding is of such dimension that an Admiralty Court cannot grant permission to a claimant to establish his claim in another tribunal."
 
 
 26
 In determining whether a concursus is required, courts have struggled to define those situations that present a genuine "multiple-claims-inadequate-fund" case as opposed to a single claim case. For example, although it is widely accepted that "a claim for loss of consortium by one spouse is a separate and independent cause of action from the related tort claim of the other spouse," Dammers, 836 F.2d at 756 (citing American Export Lines, Inc. v. Alvez, 446 U.S. 274, 284-86, 100 S.Ct. 1673, 1679-80, 64 L.Ed.2d 284 (1980)), it is equally clear that where a single claimant brings a tort action in several capacities, for example, individually and as the administrator of the estate of a decedent killed in the maritime accident, only a single claimant situation is presented, see In re Two "R" Drilling Co., 943 F.2d 576, 577 (5th Cir.1991); Midland Enters., 886 F.2d at 815-16; see also In re Zapata Gulf Marine Corp., 787 F.Supp. 612, 614 (E.D.La.1992) (explaining Two "R" Drilling ).
 
 
 27
 By contrast, the courts of appeals have divided over the question whether a third party's claim for indemnification or contribution against the shipowner, in addition to a direct claim for damages, creates a multiple claimant situation. Compare Dammers, 836 F.2d at 756-57 (potential claim for indemnity or contribution creates multiple claimant situation), with S & E Shipping, 678 F.2d at 645 (claim for indemnity and contribution does not create multiple claimant situation), and Universal Towing, 595 F.2d at 419 (same, for indemnity claim only). However, all courts have recognized that a multiple claimant situation exists where a third party seeking indemnity or contribution also requests attorneys' fees and costs associated with its claim. See Dammers, 836 F.2d at 756 ("It is ... well settled that the potential for claims for attorneys' fees or costs against a shipowner by a claimant or a third party creates a multiple claimant situation necessitating a concursus." ); see also S & E Shipping, 678 F.2d at 645-46; Universal Towing, 595 F.2d at 419.
 
 
 28
 Although the conditions creating a multiple claimant situation are well established, in recent years several courts of appeals have permitted the use of priority stipulations to convert what would otherwise constitute a "multiple-claims-inadequate-fund" case into the equivalent of a single claim case, thereby eliminating the need for a concursus. As the court in Magnolia Marine Transport explained, "[m]ultiple claimants may reduce their claims to the equivalent of a single claim by agreeing and stipulating as to the priority in which the claimants will receive satisfaction against the shipowner from the limited fund." 964 F.2d at 1576.
 
 
 29
 In Dammers, for example, the claimants stipulated that the injured seaman's tort claim would have "irrevocable priority" over his wife's loss of consortium claim, and further agreed that any claim for attorneys' fees or costs filed by a party seeking indemnification or contribution from the shipowner would have priority over both claimants. The Second Circuit recognized that "such concessions in stipulations are sufficient to allow claimants who might not otherwise be entitled to do so to proceed with common law actions in other forums." 836 F.2d at 756.
 
 
 30
 We have not addressed this issue heretofore, but we now decide, in agreement with the Second Circuit in Dammers, that as long as the priority stipulations filed in the district court ensure that the shipowner will not be exposed to competing claims to the limited fund representing more than the value of his or her vessel, the district court may authorize the parties to proceed with the state court action. We believe that this is a reasonable method of reconciling the two applicable federal statutes, one "saving to suitors" their common law remedies, including the right to a jury trial, and the other protecting an innocent shipowner from claims above the value of the ship and its cargo.
 
 
 31
 It is with these general principles in mind that we turn to the facts of the present dispute.
 
 V.
 
 32
 Application of Legal Principles to this Case
 
 
 33
 The district court stated that in this case there are "multiple claimants to a fund ($70,000) which is not adequate to satisfy all such claims if they are successful." App. at 140. Gorman asserts that this statement compels a reversal of its order permitting the state court action to proceed. The Cerasias argue that there is in effect only a single claim against the limitation fund and that the district court properly modified its prior stay. We agree with Gorman that this case presents a multiple claims controversy in the following respects and that the stipulations, in their current form, are inadequate to protect his rights under the Act.
 
 A.
 The Cerasias' Claims
 
 34
 First, the claims asserted in the Cerasias' state court complaint cannot be aggregated into a single claim for purposes of the Act. Although the appellees argue that Robert Cerasia's claim in his individual capacity and as administrator of his sons' estate may be aggregated into a single claim, citing decisions such as Two "R" Drilling, 943 F.2d at 577, and Midland Enters., 886 F.2d at 815-16, in those cases only one individual was injured by the shipowner's purported negligence. In this case, by contrast, both Michael and Robert J. Cerasia died as a result of the collision. It follows that the Cerasias must stipulate as to the relative priority of the two decedents' claims, or stipulate that the available fund will be divided equally on their behalf.
 
 
 35
 Similarly, Carol Cerasia's personal claim for loss of her children's consortium and services is a separate cause of action from the representative claims, and creates a multiple claimant situation in the same manner as a complaint containing one spouse's physical injury claim and the other's claim for loss of consortium. See Dammers, 836 F.2d at 756. Absent a stipulation specifying the relative priority of her claim as compared to that of her sons and her husband, the district court may not permit the state court action to proceed. Cf. S & E Shipping, 678 F.2d at 644 (husband's personal injury claim and wife's loss of consortium claim can be considered a single claim if plaintiffs stipulate to priority of claims).
 
 B.
 
 36
 The Contribution Claims by Dinallo and Pyskaty
 
 
 37
 The Cerasias argue that the contribution claims filed by Dinallo and Pyskaty do not create a multiple claimant situation, relying on the Sixth Circuit's opinion in S & E Shipping, 678 F.2d at 645, and the Eighth Circuit's opinion in Universal Towing, 595 F.2d at 419.[7] However, we agree with the Second Circuit that "[a]s long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification [or contribution] should constitute a multiple claimant situation necessitating a concursus. " Dammers, 836 F.2d at 757; see Kattelman v. Otis Engineering Corp., 696 F.Supp. 1111, 1115 (E.D.La.1988) (following Dammers ).
 
 
 38
 A multiple claimant situation could arise, for example, if the plaintiffs seek to enforce a state court judgment against the shipowner up to the value of the limitation fund and then seek to recover the remaining amount of the judgment against the shipowner's co-defendants. If the defendants do not sign protective stipulations with the admiralty court, they would not be foreclosed from recovering against the shipowner for contribution, even though his or her liability (assuming a finding of no privity or knowledge) has already been exhausted. It is precisely this kind of competition for the limitation fund that the Act was designed to avoid. See S & E Shipping, 678 F.2d at 646-48 (Cornelia G. Kennedy, J., concurring).[8]
 
 
 39
 In Dammers, the shipowners' co-defendants in the state court actions had not yet filed claims for indemnity and/or contribution, although the parties agreed that such claims were likely to be filed. 836 F.2d at 753 n. 3. The district court vacated its earlier stay of the state proceedings after the plaintiffs stipulated that "in the event there is a judgment or recovery in the State Court action[9] ... [,] whether against the [shipowners], or any other liable parties who may cross-claim or claim over against the [shipowners], in no event will [plaintiffs] seek to enforce said excess judgment or recovery insofar as same may expose [the shipowners] to liability in excess of [the fund]." Id. at 753-54.[10] The district court also "held that if any of the third parties also being sued by the [plaintiffs] in state court were to seek indemnification or recovery from the shipowners based on their liability to the [plaintiffs], 'the [c]ourt would be obligated to grant[ ] a stay of any such ... claims [pending in state court] ... unless the third parties executed appropriate stipulations preserving ... [the shipowners'] right to limitation.' " Id. at 758 (quoting district court opinion).
 
 
 40
 In this case, Dinallo has consented to the four protective stipulations proffered by the Cerasias, thereby protecting Gorman's federal statutory right to limitation. However, while this appeal was pending, Pyskaty filed a contribution claim in both the state and federal actions but apparently has not agreed to be bound by the stipulations. It follows that we must remand the matter to the district court to permit the parties to file amended stipulations that will adequately protect Gorman from competing claims to the limitation fund.
 
 C.
 
 41
 The Attorneys' Fees Claims by Dinallo and Pyskaty
 
 
 42
 The district court also failed to consider the effect of the claims for attorneys' fees and costs associated with Dinallo's and Pyskaty's contribution claims. As we explained above, every court to have considered the issue has held that the presence of such claims creates a multiple claimant situation that can only be eliminated by stipulating to the priority of the fees and costs over other claims. See, e.g., Dammers, 836 F.2d at 756; S & E Shipping, 678 F.2d at 645-46; Universal Towing, 595 F.2d at 419. Of course, the fact that an attorneys' fees claim is given priority by the parties in no way suggests that any fees can or will be awarded by the district court. See S & E Shipping, 678 F.2d at 646 n. 19 (intimating "no view on the propriety of awarding attorneys' fees and costs in th[e] litigation"). Indeed, should the district court decide that there is no legal basis for the claimed attorneys' fees, there would be no need to stipulate as to their priority.[11]
 
 D.
 Failure to Waive Res Judicata
 
 43
 Finally, we must consider the effect of the parties' failure to waive any claim of res judicata concerning the limited liability issues that may be adjudicated in state court. Although the appellees have conceded that "Gorman has the right to litigate in [the district court] all issues relating to limitation of liability," App. at 143, that concession alone provides insufficient protection to Gorman.
 
 
 44
 In Petition of Red Star Barge Line, Inc., 160 F.2d 436 (2d Cir.), cert. denied, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947), an early but important and widely-followed case, the Second Circuit reviewed the adequacy of the stipulations filed by a claimant who moved the district court to lift a stay of her state court action seeking damages caused by the death of her husband. The claimant, "while not conceding the [shipowners'] right to limit, did concede their right to litigate that issue in the federal court." Id. at 438.
 
 
 45
 The court found that concession to be insufficient, agreeing with the shipowners that "adjudication in the state court action may through some application of the doctrine of res judicata impair their right to limit should that issue thereafter come to trial in the limitation proceeding." Id. To avoid that result, the court "require[d] the [plaintiff] to file in the district court a statement that she waives any claim of res judicata relevant to the issue of limited liability and based on any judgment she may obtain in the state court action." Id.; see In re Complaint of North Lubec Mfg. & Canning Co., 640 F.Supp. 636, 640 (D.Me.1986) (requiring claimants to "waive any claim of res judicata" where they did not concede shipowner's "right to limit liability" but merely acknowledged owner's right "to seek limitation"); see also Gilmore & Black, The Law of Admiralty, Sec. 10-19, at 872-74 (discussing importance of res judicata stipulation).
 
 
 46
 We agree with these courts that the potential overlap between the factual questions raised in the limitation proceeding (whether the maritime mishap occurred "without the privity or knowledge" of the shipowner), and those to be litigated in the state tort action (whether the shipowner acted unreasonably) requires that a claimant seeking to vacate the stay concede both the district court's exclusive jurisdiction to decide all limitation issues and expressly agree to waive any "claim of res judicata relevant to the issue of limited liability based on any judgment obtained in the state court." Id. at 871. It is clear that the relevant waiver discussed is that of issue preclusion, notwithstanding the reference in the cases to "res judicata."
 
 
 47
 Of course, if the jury in the state proceeding concludes that Gorman acted negligently, it is likely that there will be little, if any, basis upon which he may claim that the accident occurred without his privity or knowledge. See In re M/V Sunshine, II, 808 F.2d 762, 765 (11th Cir.1987) ("in most circumstances negligence in operation will be sufficiently connected to the owner on board his own small vessel and operating it that he will be found to have privity or knowledge"). Nevertheless, at this early stage of the litigation, we cannot say that under no set of circumstances will Gorman be able to limit his liability. See In re Cirigliano, 708 F.Supp. 101, 104 (D.N.J.1989) (question of owner-operator's privity or knowledge cannot be resolved without factual development); In re Roberto, 1987 A.M.C. 982, 985, 1986 WL 15685 (D.N.J.1986) (same). If Gorman is to be given an opportunity to prove lack of knowledge or privity, he should not be barred by res judicata from raising that issue in federal court.
 
 
 48
 Finally, we commend the district court for coordinating its pretrial procedures with the state court, a measure which will result in a substantial savings of time and resources. Although the district court did not indicate whether the state court action would proceed to trial before the question of limitation was resolved, the parties apparently believe that the state trial will occur first, an order that has been described as "typical" in limitation cases. Gilmore & Black, The Law of Admiralty Sec. 10-19, at 872. After all, if Gorman is found not to have acted negligently, the question of limitation will be rendered moot. We express no view, however, as to whether courts in future limitation cases of this kind must adhere to this sequence of events.
 
 VI.
 Conclusion
 
 49
 For the foregoing reasons, we will vacate the order of the district court lifting the stay of the state court action and remand for further proceedings consistent with this opinion. On remand, if the parties amend the protective stipulations in a manner that satisfies the concerns we have identified, the district court may permit their state tort claims against Gorman to proceed. Each party to bear its own costs.
 
 
 
 [1]
 The plaintiffs alleged in the alternative causes of action under federal maritime law for wrongful death and survival
 
 
 [2]
 The district court also stated that Gorman's likelihood of limiting his liability under the Act was substantially reduced by the fact that he was piloting the Wellcraft at the time of the accident. However, it declined to dismiss his complaint on that ground, instead permitting the Cerasias to proceed with their state court action subject to Gorman's right to seek limitation. App. at 141
 
 
 [3]
 Congress enacted the Limited Liability Act in 1851 to promote investment in the commercial shipping industry, and in 1886 extended its application to "all seagoing vessels." 46 U.S.C. app. Sec. 188 (1988). Although application of the Act to non-commercial vessels has been criticized, the Supreme Court has applied the Act to pleasure craft without comment. See Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941). Moreover, every court of appeals to have considered the issue has held that, in light of its unambiguous language, the Act applies to pleasure craft. See In re Guglielmo, 897 F.2d 58, 59-61 (2d Cir.1990); Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225, 1228-29 (11th Cir.1990); In re Hechinger, 890 F.2d 202, 206 (9th Cir.1989), cert. denied, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); In re Young, 872 F.2d 176, 177-78 (6th Cir.1989), cert. denied, 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990); Pritchett v. Kimberling Cove, Inc., 568 F.2d 570, 573 n. 4 (8th Cir.1977), cert. denied, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978); Richards v. Blake Builders Supply Inc., 528 F.2d 745, 748 (4th Cir.1975); Gibboney v. Wright, 517 F.2d 1054, 1057 (5th Cir.1975)
 
 
 [4]
 As we explained in Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 948 n. 14 (3d Cir.1985):
 The burden of proof in an action seeking exoneration from or limitation of liability is divided. The claimant must prove that the destruction or loss was proximately caused by negligence on the vessel. Once negligence has been shown to be the cause, the burden then shifts to the shipowner to demonstrate that he comes within the statutory exemption because there was neither design, neglect, privity, nor knowledge on his part.
 
 
 [5]
 That clause provides in relevant part that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. Sec. 1333 (1988)
 
 
 [6]
 A third stipulation identified by Gilmore and Black, that the claimant concede the accuracy of the shipowner's assertions as to the value of the vessel, has not been widely adopted by the courts of appeals. See, e.g., In re Two "R" Drilling Co., 943 F.2d 576, 578 (5th Cir.1991) (holding that stipulation is adequate if it concedes that issue of vessel's value will be litigated exclusively before the admiralty court). However, in light of the appellees' concession that the $70,000 figure accurately represents the value of the Wellcraft, we need not address this issue here
 
 
 [7]
 These courts reason that a third party's indemnity or contribution claim is merely derivative of the plaintiff's tort claim. See Universal Towing, 595 F.2d at 419 ("The third party ... can only recover what the claimant was entitled to recover from the owner, which cannot exceed the owner's statutory limit.")
 
 
 [8]
 The best practical illustration of why a co-defendant's contribution claim creates a multiple claimant situation is set forth in Judge Cornelia G. Kennedy's concurring opinion in S & E Shipping:
 The [plaintiffs] could win a large judgment against [the shipowner and its co-defendant] jointly in the state court, say $1,000,000. [The co-defendant] could also win a judgment in state court entitling it to contribution from [the shipowner] for anything it pays the [plaintiffs] in excess of one-half the judgment, or $500,000. Because of the stipulation they have filed with the District Court, the [plaintiffs] could collect no more from [the shipowner] than the value of the limitation fund as determined by the District Court. If the fund contains only $250,000 ... then [the co-defendant], jointly and severally liable, would be obligated to pay the [plaintiffs] the unpaid balance of the judgment, or $750,000. Under its right to contribution [the co-defendant] would be entitled to recover from [the shipowner] any excess over $500,000 dollars that it paid the [plaintiffs], or $250,000. Since [the co-defendant] did not stipulate that any state court judgment in its favor would not be res judicata on the limitation question, it would then have a $250,000 claim against [the shipowner] that was not subject to limitation. The result would be that [the shipowner] would have to pay a total of $500,000 on account of the injury ... when under the Limited Liability Act it should only have been liable for the value of the vessel, or $250,000. This is a clear violation of the Limited Liability Act.
 678 F.2d at 647.
 
 
 [9]
 On appeal, the Second Circuit modified this stipulation to refer to judgments recovered by the plaintiffs in "any State Court actions." Dammers, 836 F.2d at 759 (emphasis omitted)
 
 
 [10]
 The relevant stipulation in this case prohibits the parties from enforcing a judgment in excess of $70,000 in "any state court action against Gorman." App. at 143
 
 
 [11]
 We note that Dinallo and Pyskaty have not articulated the legal basis for their claims and we express no view as to whether such fees are recoverable