**In the Matter of the Complaint of MCALLISTER TOWING OF VIRGINIA, INC. AS DISPONDENT OWNER OF THE SUZANNE MCALLISTER FOR EXONERATION FROM OR LIMITATION OF LIABILITY.**

No. 2:97CV973.

United States District Court, E.D. Virginia, Norfolk Division.

March 18, 1998.

David N. Ventker, Paul E. McGowan, Huff, Poole & Mahoney, Virginia Beach, VA, for Plaintiffs.

Jesse M. Suite, III, Carroll Arthur Rutter, Jr., Rutter & Montagna, Norfolk, VA, for Claimant.

## *OPINION AND ORDER*

FRIEDMAN, District Judge.

This matter is before the Court on three motions: Defendant's Motion to Dissolve Injunction and Lift Stay, Defendant's Motion to Stay Limitation of Liability Action, and Defendant's Motion to Increase the Security Given by the Plaintiff. For the reasons stated herein, this Court grants the defendant's motions to dissolve the injunction and stay this matter.

### I. *FACTUAL BACKGROUND*

It is alleged that on or about May 17, 1997, Stephen F. Mitchell during the course of his employment was injured and subsequently died while attempting to adjust a line on the starboard bow fender of the SUZANNE McALLISTER, a vessel which was located 600 yards off berth A in the Portsmouth Marine Terminal. Mitchell's estate, through the Administrator Howard Root (hereinafter claimant or Mitchell's estate), filed an action in the Portsmouth Circuit Court against McAllister Towing of Virginia, the owner of the vessel, seeking $1,500,000.00 in damages.[1]

On October 10, 1997, McAllister Towing, as dispondent owner of the SUZANNE McALLISTER, filed a Complaint in Admiralty for Exoneration from or Limitation of Liability under the Limitation of Liability Act, 46 U.S.C.App. § 181, *et seq.*, with this Court.

---

**1.** *Howard M. Root, Administrator of the Estate of Stephen Franklin Mitchell, Jr., deceased v. McAllister Towing of Virginia, Inc.,* Case No. CL97–0955.

On November 3, 1997, an injunction staying any other proceeding in this matter was entered by Judge Clarke. Pursuant to Judge Clarke's Order, a letter of underwriting for $250,000.00 was entered by Steamship Mutual Underwriting Association on behalf of the McAllister Towing Co.

On December 10, 1997, Mitchell's estate filed a counter claim in this case for $1,500,000.00. Claimant seeks compensation for the decedent's pain and suffering preceding death, for loss of consortium, and for the lost wages of the decedent. On January 16, 1998, Stephen Mitchell's estate filed protective stipulations limiting McAllister Towing's exposure for damages to the amount of the limitation fund and conceding the ship-owner's right to limit liability in this Court. Also on January 16, Mitchell's estate filed a motion to dissolve the state court injunction and enter a stay of the federal proceedings.

On February 2, 1998, in response to the briefing on the pending Motion to Lift the Stay, the claimant filed a Motion to Increase the Security Given by the plaintiff. In that motion, claimant asks this Court to order that the vessel and pending freight be appraised to determine its value. This Court heard oral argument on the three pending motions on February 13.

## II. The Legal Framework for this Case

The Limitation of Liability Act (LLA), 46 U.S.C.App. § 181, *et seq.*, provides a procedure whereby vessel owners can enjoin all pending suits and compel suit to be filed in a special limitation proceeding in federal court so that liability can be determined and limited to the value of the vessel and the freight pending.[2] The historical purpose of the LLA, passed in 1851, was to encourage a private maritime fleet and protect the fleet from ruinous liability. *See Complaint of Midland Enterprises, Inc.,* 886 F.2d 812 (6th Cir.1989). In a limitation proceeding brought under the LLA, the District Court Judge performs two primary functions: (1) if the court determines that the

loss occurred without the knowledge or privity of the vessel owner, then the court must limit the vessel owner's liability to the limitation fund (the value of the vessel and its cargo); and (2) if the claims exceed the limitation fund, then the court must provide for distribution of the fund pro rata. *Newton v. Shipman,* 718 F.2d 959, 961 (9th Cir.1983) (citing *In re Moran Transp. Co.,* 185 F.2d 386, 389 (2d Cir.1950), *cert. denied,* 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951)).

The Savings for Suitors Clause states that "the district courts shall have original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333. One of the remedies saved to suitors is the right to a trial by jury. This savings obviously creates a conflict with the LLA, which involves a non-jury equitable proceeding. *See Waring v. Clarke,* 46 U.S. 441, 5 How. 441, 12 L.Ed. 226 (1847). The conflict between the Savings for Suitors clause and the LLA is the center of the controversy before the Court in the present motions. The claimant in this case seeks to exercise his option under the Savings for Suitors clause to proceed in State Court. Conversely, the vessel owner, McAllister, seeks to have this matter resolved in an admiralty proceeding before this Court pursuant to the LLA.

Generally, the decision whether to stay parallel proceedings in admiralty is left in the discretion of the District Court. However, in an effort to accommodate both a shipowner's right to limit its liability and a claimant's right to a trial, the Supreme Court has established two situations in which a claimant must be allowed to pursue an action outside the limitation proceeding and have the claim tried before the jury: (1) when the value of the limitation funds exceeds the total value of all claims asserted against the shipowner; or (2) when only one claim is asserted against the shipowners and sufficient stip-

---

**2.** The Federal District Court has exclusive jurisdiction over a limitation proceeding. *Norwich & New York Transp. Co. v. Wright,* 13 Wall. 104, 80 U.S. 104, 20 L.Ed. 585 (1871). State courts do not have concurrent jurisdiction under the Savings for Suitors clause since the remedy of limitation is not from common law.

ulations are filed.[3] *See Lake Tankers Corp. v. Henn*, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); *Ex Parte Green*, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212 (1932); *Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931); *see also Midland Enterprises Inc.*, 886 F.2d at 815; *E.G. Jefferson Barracks Marine Service, Inc. v. Casey*, 763 F.2d 1007 (8th Cir.1985); *see also Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750 (2d Cir.1988); Gilmore and Black, *The Law of Admiralty*, Sections 10–19 at 871 (2d Ed.1975). In this case, the value of the limitation fund (purportedly $250,000.00), does not exceed the value of the potential claim (claimant's alleged damages are $1,500,-000.00). Therefore, the Court must determine whether this matter involves a single claim, and whether the claimant's stipulations are sufficient to allow it to proceed in state court.

III. *Whether the claimant is a "single claim" claimant.*

■ The claimant, Howard Root, Administrator for the estate of Stephen Mitchell, argues that this case involves a single claim claimant, and as such, has filed stipulations with this Court in an attempt to satisfy the requirement to proceed in state court.

McAllister disagrees with claimant's proposition that this case involves a single claim since the claimant alleges two separate causes of action in the Portsmouth Circuit Court proceeding: (1) damages for personal injuries suffered by the decedent; and (2) damages on behalf of the decedent's family for his wrongful death. Claimant disputes

that its case involves multiple claims for the purpose of this Court's analysis.

McAllister relies on *Gorman v. Cerasia*, 2 F.3d 519 (3d Cir.1993), in support of its argument that when a decedent's estate seeks both pain and suffering on behalf of the decedent and lost support to the family, it is considered two separate claims. In *Gorman*, the Third Circuit found that in order to protect the vessel owner from claims greater than the value of the vessel since there were multiple claims at issue the state court proceeding had to be stayed absent a stipulation specifying the priority of the claims. *Id.* at 526. McAllister contends that this case is similar to *Gorman* which involved multiple claims, and therefore, that the claimant should not be permitted to proceed in state court with prioritizing its claims.

However, this Court agrees with the claimant that the facts in *Gorman* can be distinguished from the facts in this case. On the most basic level, the *Gorman* case involved claims for two sons' deaths, rather than for one decedent. *Id.* Based on the fact that the claimants in *Gorman* sought relief for two decedents, the court in *Gorman* found that there were multiple claims requiring prioritization. *Id.* Additionally, in *Gorman*, the mother of the two deceased men sought compensation through a separate claim from that of the estate's personal representative. *Id.* Similar facts are not present in this case. Rather, this case involves one personal representative seeking compensation for the wrongful death of the deceased and predeath personal injuries incurred by the deceased. The various facts that persuaded the Third Circuit to find that the plaintiff in *Gorman* brought multiple claims requiring prioritization are not present in this case.[4]

---

3. Even when there are multiple claims, in some cases an injunction issued under the LLA should be dissolved unless the vessel owner can show that his right to limit liability will be prejudiced. *Newton v. Shipman*, 718 F.2d 959 (9th Cir.1983). Where multiple claims are involved, the claimant is required to stipulate the priority in which their claims will be paid from the limitation fund. *Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032 (11th Cir.1996), *cert. denied* — U.S. —, 117 S.Ct. 2455, 138 L.Ed.2d 213 (1997); *Texaco, Inc. v. Williams*, 47 F.3d 765 (5th Cir.1995), *cert. denied* 516 U.S. 907, 116 S.Ct. 275, 133 L.Ed.2d 196 (1995); *Gorman v. Cerasia*, 2 F.3d 519 (3d Cir.1993).

4. It is established law that a claim against a vessel-owner for attorney fees and costs creates a multiple claim situation requiring claimant prioritization. *See Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 756 (2d Cir.1988); *Complaint of Mohawk Assoc. and Furlough, Inc.*, 897 F.Supp. 906, 911 (D.Md.1995). The issue of attorney fees did not arise in the argument presented by counsel in this case. However, the Court notes that the Stipulations filed by the claimant prioritize the claimant's potential claim against any claim brought by a co-liable defendant seeking indemnification for attorney's fees and costs. *See* Stipulations Para. 8.

Other Circuits have similarly held that the policy behind the LLA is to provide a federal forum for resolution of all "competing" claims. *See Midland Enterprises*, 886 F.2d at 815; *In Re: Two R Drilling Co., Inc.*, 943 F.2d 576, 578 (5th Cir.1991) (process for allowing a case to proceed in state court under the single claimant exception applies even where the personal representative single claimant represented others). In the *Midland* case, the court found that since there was only one personal representative of the deceased, there was only one claim for the purpose of LLA. Therefore, the Sixth Circuit allowed the *Midland* case to proceed in state court. The court found that the possibility of the judgment being split among beneficiaries, did not create two claims. *Id.* Similarly in this case, there is only one claimant, Mr. Root, the personal representative of the deceased. While the claimant seeks damages based on different theories, *i.e.*, pain and suffering and familial compensation, nonetheless, there is only one claimant seeking the damages. The claimant additionally points out that the applicable wrongful death statute for Virginia, Code of Virginia § 8 .01–50, provides a single cause of action to the personal representative of the decedent.[5] *Id.* at 816–817 (finding a single claim situation by relying in part on the Tennessee wrongful death statute and the fact that it provides a single cause of action for the personal representative).

This Court is persuaded by the sound reasoning of the Supreme Court and multiple Circuit Courts. Where a "single claimant brings an action in several capacities, for example, individually and as administrator of the estate of a decedent killed in the maritime accident, only a single claimant situation is presented." *Gorman*, 2 F.3d at 524. Therefore, for the purposes of the LLA analysis, this case involves a single claimant, and, provided that the appropriate stipulations

have been filed, the claimant should be allowed to proceed in State Court.

## IV. *The Sufficiency of Claimant's Stipulations*

▇ In an effort to proceed in State Court, the claimant has filed with this Court "Single Claimant's Stipulations." The claimant contends that the stipulations make clear that under no circumstances will the shipowner be held liable for damages in excess of the limitation fund. Claimant's first stipulation states that "the value of the limitation fund equals the value of the vessel and its cargo." *See* Stipulations Para. 1. The remainder of the stipulations concede jurisdiction to the federal court on the issue of limitation of liability, and provide that if the state court awards an amount in excess of the limitation fund, the parties will return to federal court in this limitation proceeding to determine whether the vessel owner is entitled to limited liability under the LLA. *See generally* Stipulations.

McAllister challenges the sufficiency of the stipulations based on the fact that the claimant's stipulations do not specifically concede the value of the vessel and its freight.[6] McAllister argues that based on the wording of the claimant's stipulation, the value of the vessel is in dispute, and therefore, the Federal Court should retain jurisdiction and dispose of the whole case. This Court disagrees. First, the Supreme Court acknowledged such a situation in *Ex Parte Green*, and stated that "if the value of the vessel be not accepted as the limit of the owner's liability, the federal court is *authorized to resume* jurisdiction and dispose of the whole case." 286 U.S. at 440 (emphasis added). At least the Second and Ninth Circuits have approved stipulations similar to those filed in this case and held that a claim-

---

**5.** Interestingly, McAllister relies on the same limitation in the Virginia law to argue that because the Virginia wrongful death statute only recognizes the claim of the personal representative, not the decedent, there is automatically a multiple claim situation in this case. The Court finds McAllister's argument unconvincing on this point.

**6.** In the briefs filed, McAllister advanced additional arguments regarding the sufficiency of the claimant's stipulations (*e.g.*, the question of the seaworthiness of the vessel). However at the hearing in this matter, McAllister conceded that its only dispute regarding the sufficiency of the stipulations related to the value of the vessel, and that the problem could be resolved by claimant's Supp. R. F(7) motion.

ant need not stipulate to the exact value of the vessel when it stipulates to the federal district court's right to determine the limit of liability. *See Anderson v. Nadon,* 360 F.2d 53, 58 n. 8 (9th Cir.1966); *Petition of Red Barge Line,* 160 F.2d 436 (2d Cir.1947); *cert. denied,* 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947).

Furthermore, in support of its argument that the stipulations were insufficient, McAllister cited *Midland Enterprises* for the proposition that the claimant must either concede the value of the vessel or follow the procedures set forth in Fed.R.Civ.P. Supp. R. F(7), which provides a procedure for the claimant to properly contest the value of the vessel. 886 F.2d at 817–818. Based on McAllister's argument, but without conceding the necessity to do so, claimant filed a motion under Fed.R.Civ.P. Supp. R. F(7) to increase the security and requested an official appraisal of the vessel and its freight.

After a review of the stipulations and the relevant case law, the Court concludes that the claimant's stipulations adequately protect the shipowner's interest in limiting liability under the LLA. While claimant does not specifically concede that the value of the vessel is $250,000.00, the stipulation does concede that the value of the limitation fund equals the value of the vessel (Stipulation Para. 1) and concedes that no res judicata arguments will be made based upon any state court judgment (Stipulation Para. 2). *See Gorman,* 2 F.3d at 524–25. Most importantly, in paragraphs 3 through 7 of the Stipulations, the claimant unequivocally concedes that the Federal District Court has exclusive jurisdiction to decide all limitation of liability issues and that McAllister has a right to seek exoneration from or limitation of liability in this proceeding. *See Ex Parte Green,* 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212 (1932). Furthermore, to the extent

there is a controversy at some later date regarding the precise value of the vessel and pending freight, claimant has moved to have the security increased pursuant to Fed. R.Civ.P. Supp. R. F(7).[7] *See Midland Enterprises,* 886 F.2d at 817–818. Based on the claimant's thorough Stipulations and the F(7) Motion, this Court finds that the vessel owner's rights to limited liability under the LLA are adequately protected.

The sufficiency of the stipulations, combined with this Court's conclusion that this case involves one claimant with no chance of "competing" claims, requires that the Court grant claimant's motions to dissolve the injunction and lift the stay so as to permit this matter to proceed in state court. However, following the Supreme Court's instruction in *Langnes,* 282 U.S. at 541–42, this Court will retain "as a matter of precaution, the petition for a limitation of liability to be dealt with in the possible . . . event that the right of the petitioner to a limited liability might be brought into question in the state court, or the case may otherwise assume such form in that court as to bring it within the exclusive power of a court of admiralty." *Id.*

## V. CONCLUSION

For all of the reasons set forth above, it is this Court's ORDER that

(1) defendant's motion to dissolve the injunction is hereby GRANTED; and

(2) defendant's motion to stay this action is hereby GRANTED.

The Court will retain jurisdiction as described above to review any and all matters related to the vessel-owner's right to limitation of liability. The parties are instructed to report to this Court immediately either upon resolution of the underlying matter, or if a situation develops where multiple claimants become an issue in the state court ac-

---

**7.** McAllister responded to the claimant's pending Motion To Increase the Security requesting that any appraisal be conducted immediately and at the expense of the claimant. McAllister urged the Court to order the appraisal immediately due to its uncertainty as to where the vessel will be located, or for that matter, whether McAllister will still own the vessel, if and when the issue of valuation arises in the future. Counsel for claimant was present when McAllister explained the

circumstances, and nevertheless objected to the Court ordering the appraisal to occur immediately. Counsel for claimant is aware of the Local Rule in this District which provides that under normal circumstances the appraisal is paid for by the movant. *See* LAR (e)(11). Based on the argument presented by counsel at the hearing in this matter, this Court finds that there is no basis for the immediate reappraisal of the vessel.

tion, thereby requiring amendment to the claimant's stipulations (for prioritization of claims). The defendant's motion to increase the security provided by plaintiff will be held in ABEYANCE until such time as this case is either dismissed or reopened to address the value of the limitation fund or related matters.

It is so ORDERED.