# LEWIS *v.* LEWIS & CLARK MARINE, INC.

No. 99–1331.   Argued November 29, 2000—Decided February 21, 2001

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Roy C. Dripps* argued the cause for petitioner. With him on the briefs was *Gail G. Renshaw.*

*James V. O'Brien* argued the cause and filed a brief for respondent.

JUSTICE O'CONNOR delivered the opinion of the Court.

This case concerns a seaman's ability to sue a vessel owner in state court for personal injuries sustained aboard a vessel. Federal courts have exclusive jurisdiction over admiralty and maritime claims, but the jurisdictional statute "sav[es] to suitors in all cases all other remedies to which they are otherwise entitled." 28 U. S. C. § 1333(1). Another statute grants vessel owners the right to seek limited liability in federal court for claims of damage aboard their vessels. 46 U. S. C. App. § 181 *et seq.* In this case, the District Court, after conducting proceedings to preserve the vessel owner's right to seek limited liability, dissolved the injunction that prevented the seaman from litigating his personal injury claims in state court. The Eighth Circuit Court of Appeals reversed, concluding that the vessel owner had a right to contest liability in federal court, and that the seaman did not have a saved remedy in state court. The question presented is whether the District Court abused its discretion in dissolving the injunction.

I

Petitioner, James F. Lewis, worked as a deckhand aboard the M/V *Karen Michelle,* owned by respondent, Lewis & Clark Marine, Inc. Petitioner claims that on March 17, 1998, he was injured aboard the M/V *Karen Michelle* when he tripped over a wire and hurt his back. App. 12. In April 1998, petitioner sued respondent in the Circuit Court of Mad-

ison County, Illinois. Petitioner claimed negligence under the Jones Act, 46 U. S. C. App. § 688, unseaworthiness, and maintenance and cure. A Jones Act claim is an *in personam* action for a seaman who suffers injury in the course of employment due to negligence of his employer, the vessel owner, or crew members. *Ibid.; Plamals* v. *S. S. "Pinar Del Rio,"* 277 U. S. 151, 155–156 (1928). Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea. See generally *Mitchell* v. *Trawler Racer, Inc.,* 362 U. S. 539, 550 (1960). A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship. See generally *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525, 527–528 (1938). Petitioner did not demand a jury trial in state court.

In anticipation of petitioner's suit, respondent had filed a complaint for exoneration from, or limitation of, liability in the United States District Court for the Eastern District of Missouri pursuant to the Limitation of Liability Act (Limitation Act or Act), 46 U. S. C. App. § 181 *et seq.* The District Court followed the procedure for a limitation action provided in Supplemental Admiralty and Maritime Claims Rule F. The court entered an order approving a surety bond of $450,000, representing respondent's interest in the vessel. The court ordered that any person with a claim for the events of March 17, 1998, file a claim with the court within a specified period. The court then enjoined the filing or prosecution of any suits against respondent related to the incident on March 17, 1998. App. 30–33.

Petitioner filed an answer to respondent's complaint, a claim for damages for injury, and a motion to dissolve the restraining order. Petitioner averred that he was the sole claimant concerning the events of March 17, 1998. He waived any claim of res judicata concerning limited liability based on a state court judgment; he stipulated that respond-

ent could relitigate issues relating to the limitation of liability in District Court. *Id.*, at 72. Petitioner later stipulated that the value of his claim was less than the value of the limitation fund, *id.*, at 102, recanting his earlier allegation that his claim exceeded the vessel's value.

The District Court dissolved the restraining order that prevented petitioner from proceeding with his cause of action in state court. *In re Complaint of Lewis & Clark Marine, Inc.*, 31 F. Supp. 2d 1164 (ED Mo. 1998). The court recognized that federal courts have exclusive jurisdiction to determine whether a vessel owner is entitled to limited liability. The court also noted, however, that the statute that confers exclusive jurisdiction over admiralty and maritime claims to federal courts contains a clause that saves to suitors "all other remedies to which they are otherwise entitled." 28 U. S. C. § 1333(1). The court reasoned that "a tension exists between the exclusive jurisdiction vested in the admiralty courts to determine a vessel owner's right to limited liability and the savings to suitors clause." 31 F. Supp. 2d, at 1168.

The District Court found two exceptions to exclusive federal jurisdiction under which a claimant is allowed to litigate his claim in state court. The first is where the value of the limitation fund exceeds the total value of all claims asserted against the vessel owner. The second is where a single claimant brings an action against the vessel owner seeking damages in excess of the value of the vessel. The court concluded that it should dissolve the injunction in this case because petitioner met the limited fund exception and probably met the single claimant exception as well. *Id.*, at 1169, and n. 3. The court decided to retain jurisdiction over the limitation action to protect the vessel owner's right to limitation in the event that the state proceedings necessitated further proceedings in federal court.

The Eighth Circuit Court of Appeals held that the District Court abused its discretion in dissolving the injunction. 196

F. 3d 900 (1999). The Court of Appeals, like the District Court, recognized potential tension between the saving to suitors clause in the jurisdictional statute and the Limitation Act. The Court of Appeals, however, perceived no conflict between those provisions in the instant case. The Court of Appeals explained that a court must consider whether the vessel owner has the right to remain in federal court and whether the claimant is seeking a saved remedy in another forum. The court concluded that respondent had a right to seek exoneration from liability, not merely limitation of liability, in federal court. The court also concluded that because petitioner did not request a trial by jury, he had not sought a saved remedy in state court. The court determined that there was no substantive difference between the remedies afforded petitioner in state court and federal court. For these reasons, the court held that there was no basis for dissolving the injunction.

We granted certiorari, 530 U. S. 1202 (2000), to resolve a conflict between the Eighth Circuit's decision and the decisions of other Courts of Appeals. Compare 196 F. 3d 900 (CA8 1999), with *Kreta Shipping S. A.* v. *Preussag International Steel Corp.*, 192 F. 3d 41 (CA2 1999), *Beiswenger Enterprises Corp.* v. *Carletta*, 86 F. 3d 1032 (CA11 1996), and *Linton* v. *Great Lakes Dredge & Dock Co.*, 964 F. 2d 1480 (CA5 1992).

## II

### A

Article III, § 2, of the United States Constitution vests federal courts with jurisdiction over all cases of admiralty and maritime jurisdiction. Section 9 of the Judiciary Act of 1789 codified this grant of exclusive original jurisdiction, but "sav[ed] to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Ch. 20, § 9, 1 Stat. 77. In the intervening years, Congress has revised the language of the saving to suitors clause, but

its substance has remained largely unchanged. See 28 U. S. C. §§ 41(3) and 371 Third (1940 ed.) ("saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it"); 28 U. S. C. § 1333(1) (1946 ed., Supp. II) ("saving to the libellant or petitioner in every case any other remedy to which he is otherwise entitled"); Act of May 24, 1949, ch. 139, § 79, 63 Stat. 101 ("saving to suitors in all cases all other remedies to which they are otherwise entitled"). The jurisdictional statute now states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" 28 U. S. C. § 1333(1) (emphasis added).

What the drafters of the Judiciary Act intended in creating the saving to suitors clause is not entirely clear and has been the subject of some debate. See, *e. g.,* 1 J. Goebel, Antecedents and Beginnings to 1801, History of the Supreme Court of the United States 474 (1971). Compare Casto, The Origins of Federal Admiralty Jurisdiction in an Age of Privateers, Smugglers, and Pirates, 37 Am. J. Legal Hist. 117, 139–149 (1993), with Gutoff, Original Understandings and the Private Law Origins of the Federal Admiralty Jurisdiction, A Reply to Professor Casto, 30 J. Mar. L. & Com. 361, 387–390 (1999). This Court theorized that the saving to suitors clause was "inserted, probably, from abundant caution, lest the exclusive terms in which the power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed. This leaves the concurrent power where it stood at common law." *New Jersey Steam Nav. Co.* v. *Merchants' Bank of Boston,* 6 How. 344, 390 (1848).

In early cases we defined the limits of the clause. For instance, proceedings *in rem* were deemed outside the scope of the clause because an *in rem* action was not a common law remedy, but instead a proceeding under civil law. See, *e. g.,*

*The Hine* v. *Trevor*, 4 Wall. 555, 571–572 (1867); *The Moses Taylor*, 4 Wall. 411, 431 (1867). We later distinguished between the concept of rights and remedies. *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372, 383–384 (1918). In *Chelentis*, we held that maritime law governs a seaman's right to recovery against a vessel owner for his injuries aboard the vessel. We explained that "[t]he distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury." *Id.*, at 384.

In a subsequent case, the Court defined the saving to suitors clause as a grant to state courts of *in personam* jurisdiction, concurrent with admiralty courts. *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109, 123 (1924). We held enforceable an arbitration agreement between an owner of a steamship and a company that chartered the ship. We reasoned that agreements to arbitrate were valid under admiralty law, and that the State of New York had the power to confer on its courts the authority to compel parties to submit to arbitration. We explained that the state arbitration law merely provided a remedy in state court:

> "The 'right of a common law remedy,' so saved to suitors, does not . . . include attempted changes by the States in the substantive admiralty law, but it does include all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved. It includes remedies *in pais*, as well as proceedings in court; judicial remedies conferred by statute, as well as those existing at the common law; remedies in equity, as well as those enforceable in a court of law." *Id.*, at 123–124.

Thus, the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims. See also *Madruga* v. *Superior*

*Court of Cal., County of San Diego,* 346 U. S. 556, 560–561 (1954); *Steamboat Co.* v. *Chase,* 16 Wall. 522, 533–534 (1873).

B

Admiralty and maritime law includes a host of special rights, duties, rules, and procedures. See, *e. g.,* 46 U. S. C. App. § 721 *et seq.* (wrecks and salvage); § 741 *et seq.* (suits in admiralty by or against vessels or cargoes of the United States); 46 U. S. C. § 10101 *et seq.* (merchant seamen protection and relief). Among these provisions is the Limitation Act, 46 U. S. C. App. § 181 *et seq.* The Act allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel. The central provision of the Act provides:

> "The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." § 183(a).

See also § 183(b) (requiring supplemental fund for some vessels for personal injury and death claimants).

Congress passed the Limitation Act in 1851 "to encourage ship-building and to induce capitalists to invest money in this branch of industry." *Norwich Co.* v. *Wright,* 13 Wall. 104, 121 (1872). See also *British Transport Comm'n* v. *United States,* 354 U. S. 129, 133–135 (1957); *Just* v. *Chambers,* 312 U. S. 383, 385 (1941). The Act also had the purpose of "putting American shipping upon an equality with that of other

maritime nations" that had their own limitation acts. *The Main* v. *Williams*, 152 U. S. 122, 128 (1894). See also *Norwich Co., supra*, at 116–119 (discussing history of limitation acts in England, France, and the States that led to the passage of the Limitation Act).

The Act is not a model of clarity. See 2 T. Schoenbaum, Admiralty and Maritime Law 299 (2d ed. 1994) ("Th[e] 1851 Act, badly drafted even by the standards of the time, continues in effect today"). Having created a right to seek limited liability, Congress did not provide procedures for determining the entitlement. This Court did not have an opportunity to review the Act in detail until 20 years after its enactment. See *Norwich Co., supra*. Deeming the Act "incapable of execution" without further instructions to courts, *id.*, at 123, we designed the procedures that govern a limitation action, and promulgated them the same Term, see Supplementary Rules of Practice in Admiralty, 13 Wall. xii–xiv. We later explained that the scheme "was sketched in outline" by the Act, and "the regulation of details as to the form and modes of proceeding was left to be prescribed by judicial authority." *Providence & New York S. S. Co.* v. *Hill Mfg. Co.*, 109 U. S. 578, 590 (1883).

The 1872 rules were "intended to facilitate the proceedings of the owners of vessels for claiming the limitation of liability secured by the statute." *The "Benefactor,"* 103 U. S. 239, 244 (1880). Under the rules, a vessel owner seeking limitation of liability had to file a petition. The district court would obtain an appraisal of the vessel's value or the owner's interest in the vessel, and ensure that payment or some guarantee of payment was deposited with the court. The court would then order all claimants to appear. Supplementary Rule of Practice in Admiralty 54, 13 Wall., at xii–xiii. In the process of seeking limited liability, the owner was permitted to contest the fact of liability. Rule 56, 13 Wall., at xiii. The ability to contest liability relieved vessel owners of the "very onerous" English rule, which required

vessel owners to confess liability in order to seek the benefit of limitation. *The "Benefactor," supra,* at 243 ("[T]his court, in preparing the rules of procedure for a limitation of liability, deemed it proper to allow a party seeking such limitation to contest any liability whatever"). The claimants would then contest the vessel owner's claims for exoneration and limitation of liability. Rule 56, 13 Wall., at xiii. If the owner succeeded in its effort to limit liability, but was not exonerated, the court was responsible for distributing the fund deposited in the court among the claimants. Rule 55, 13 Wall., at xiii.

The procedure for a limitation action is now found in Supplemental Admiralty and Maritime Claims Rule F. Much like its predecessor provisions, Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation of, liability. The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

## C

Some tension exists between the saving to suitors clause and the Limitation Act. One statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court. We confronted this tension in *Langnes* v. *Green,* 282 U. S. 531 (1931). The respondent in *Langnes* was employed on the petitioner's vessel. The employee sued the vessel owner in state court for $25,000 for personal injuries suffered aboard the vessel. The vessel owner later filed a petition for limitation of liability in Federal District Court. The District Court enjoined any further proceedings in state court

and issued a notice that all claimants appear. The employee filed his claim in District Court. The parties stipulated that the vessel was worth no more than $5,000.

The employee sought dissolution of the injunction. He argued that the state court had jurisdiction over his claim, that he was the only possible claimant, that there was only one vessel owner, and therefore the vessel owner could claim the benefit of the Limitation Act by proper pleading in state court. The District Court denied the motion and proceeded to decide the merits, concluding that the vessel owner was not liable. The Court of Appeals reversed on the issue of limitation.

On review, this Court concluded that both courts erred in failing to recognize that the state court was competent to hear the employee's personal injury claim and the vessel owner's claim for limitation. In our view, the choice before the District Court was whether it should retain the limitation action and preserve the right of the vessel owner but destroy the right of the employee in state court to a common law remedy, or allow the action in state court to proceed and preserve the rights of both parties. We concluded that the latter course was just. We decided that the District Court should have dissolved the injunction and allowed the employee to proceed with his claim in state court, and retained jurisdiction over the petition for limitation of liability in the event that the state proceedings necessitated further proceedings in federal court. We explained that the District Court's decision is "one of discretion in every case," and remanded for further proceedings. *Id.*, at 544.

After our decision, the employee was permitted to pursue his claim in state court. See *Ex parte Green*, 286 U. S. 437 (1932). In those proceedings, notwithstanding this Court's recognition of the vessel owner's right to seek limitation of liability in federal court, the employee sought to litigate that issue in state court. We approved of the District Court's decision to enjoin any further proceedings in state court until

the employee agreed to withdraw his submission on the issue of limited liability. *Id.*, at 440.

We have also considered the conflict between the saving to suitors clause and the Limitation Act in a case where several claimants attempted to sue a vessel owner in state court. *Lake Tankers Corp.* v. *Henn*, 354 U. S. 147 (1957). A pleasure yacht, the *Blackstone*, capsized after a collision with a tug that was push-towing a barge, injuring several persons and killing one. Claimants sued the owner of the tug and barge in state court actions. The owner filed a petition for exoneration from, or limitation of, liability in federal court. The owner also filed a bond for the tug in the amount of approximately $119,000 and a bond for the barge in the amount of $165,000. The District Court enjoined other proceedings concerning the collision. Thereafter, the claimants made their demands for damages; the total claims were less than the amount of the two bonds. All claimants relinquished any right to damages in excess of that set forth in their claims. They further waived any claim of res judicata relating to the issue of the vessel owner's ability to limit liability. The District Court decided to dissolve the injunction because the total limitation fund exceeded the amount of the claims. The Court of Appeals affirmed.

We affirmed the Court of Appeals' decision. In examining the Limitation Act and its history, we found it "crystal clear that the operation of the Act is directed at misfortunes at sea where the losses incurred exceed the value of the vessel and the pending freight." *Id.*, at 151. Where the value of the vessel and the pending freight exceed the claims, however, there is no necessity for the maintenance of the action in federal court. *Id.*, at 152. The stipulations, in addition to other restrictions on the state court proceedings, ensured "beyond doubt that [the owner's] right of limitation under the Act was fully protected." *Ibid.* We explained that to expand the scope of exclusive jurisdiction to prevent the state court actions

"would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights, even where the limitation fund is known to be more than adequate to satisfy all demands upon it. The shipowner's right to limit liability is not so boundless. The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited liability. In fact, the Congress not only created the limitation procedure for the primary purpose of apportioning the limitation fund among the claimants where that fund was inadequate to pay the claims in full, but it reserved to such suitors their common-law remedies." *Id.*, at 152–153.

Since these decisions, the Courts of Appeals have generally permitted claimants to proceed with their claims in state court where there is only a single claimant, as in *Langnes*, or where the total claims do not exceed the value of the limitation fund, as in *Lake Tankers*. See, *e. g.*, *Beiswenger Enterprises Corp.* v. *Carletta*, 86 F. 3d 1032 (CA11 1996); *Linton* v. *Great Lakes Dredge & Dock Co.*, 964 F. 2d 1480 (CA5 1992). See also *Kreta Shipping S. A.* v. *Preussag International Steel Corp.*, 192 F. 3d 41 (CA2 1999) (foreign forum).

## III

In the instant case, we believe that the District Court properly exercised its discretion in dissolving the injunction that prevented petitioner from pursuing his claims in state court. The District Court, guided by our prior cases, attempted to reconcile petitioner's right to his remedy under the saving to suitors clause with respondent's right to seek limited liability under the Limitation Act. The court dissolved the injunction against the state court proceedings after it concluded that respondent's right to seek limitation of liability would be adequately protected. Respondent's

rights were protected by petitioner's stipulation that his claim did not exceed the limitation fund, petitioner's waiver of any defense of res judicata with respect to limitation of liability, and the District Court's decision to stay the Limitation Act proceedings pending state court proceedings.

The Eighth Circuit held that the District Court should not have dissolved the injunction without first "finding . . . actual statutory conflict between the Limitation Act and the 'saving to suitors' clause in the case at bar." 196 F. 3d, at 906. The Court of Appeals concluded that there was no conflict here because respondent had a right to seek exoneration from liability in federal court, and petitioner did not have a saved remedy under the saving to suitors clause. That reasoning misapprehends this Court's prior decisions.

In this case, there was a conflict between the saving to suitors clause and the Limitation Act. Petitioner sued respondent in state court; under the saving to suitors clause, that court had jurisdiction to hear his claims. Respondent sought limited liability for petitioner's claims in federal court; the Limitation Act granted the federal court jurisdiction over that action. Both parties selected legitimate forums for their claims, and therein lies the conflict. Had petitioner sought to institute *in rem* proceedings against respondent in state court, that court would have lacked jurisdiction because the saving to suitors clause does not reach actions *in rem*. Similarly, had respondent sought limited liability for payment of wages in federal court, that court would not have had jurisdiction under the Limitation Act because claims for wages due employees are not covered. 46 U. S. C. App. § 189. See also *In re East River Towing Co.*, 266 U. S. 355, 367 (1924). Here, however, there appears to have been no obstacle to each party pursuing its claim in the forum of its choice, except the competing action.

In deciding that the case should proceed in federal court, the Court of Appeals relied on two flawed premises: that the Limitation Act grants vessel owners a right to obtain

exoneration from liability in federal court where limitation of liability is not at issue, and that the saving to suitors clause reserves to claimants only the right to receive a jury trial.

By its own terms, the Limitation Act protects the right of vessel owners to limit their liability to the value of the vessel, provided that the events or circumstances giving rise to the damage occurred without the vessel owner's privity or knowledge. The Act was designed to encourage investment and protect vessel owners from unlimited exposure to liability. We have also made clear, however, that the scope of exclusive federal jurisdiction is proportional to the federal interest in protecting the vessel owner's right to seek limitation of liability. See *Lake Tankers*, 354 U. S., at 153. We have explained that "[t]he Act is not one of immunity from liability but of limitation of it." *Id.*, at 152. We see no reason to revisit that conclusion and decline respondent's invitation to expand the scope of the Act.

In construing the Limitation Act, this Court long ago determined that vessel owners may contest liability in the process of seeking limited liability, and we promulgated rules to that effect pursuant to our "power to regulate . . . proceedings." *The "Benefactor,"* 103 U. S., at 244; Supplementary Rule of Practice in Admiralty 56, 13 Wall., at xiii; Supplemental Admiralty and Maritime Claims Rule F(2). Thus, we agree with respondent that a vessel owner need not confess liability in order to seek limitation under the Act. The Act and the rules of practice, however, do not create a freestanding right to exoneration from liability in circumstances where limitation of liability is not at issue. In this case, petitioner stipulated that his claim for damages would not exceed the value of the vessel and waived any claim of res judicata from the state court action concerning issues bearing on the limitation of liability. The District Court concluded that these stipulations would protect the vessel owner's right to seek limited liability in federal court. Then, out of an "abundance of caution," the court stayed the limitation

proceedings so that it could act if the state court proceedings jeopardized the vessel owner's rights under the Limitation Act. 31 F. Supp. 2d, at 1170–1171. We believe nothing more was required to protect respondent's right to seek a limitation of liability.

The district courts have jurisdiction over actions arising under the Limitation Act, and they have discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court. If the district court concludes that the vessel owner's right to limitation will not be adequately protected—where for example a group of claimants cannot agree on appropriate stipulations or there is uncertainty concerning the adequacy of the fund or the number of claims—the court may proceed to adjudicate the merits, deciding the issues of liability and limitation. See, e. g., *Lake Tankers, supra,* at 152; *Port Arthur Towing Co.* v. *John W. Towing, Inc.,* 42 F. 3d 312, 314 (CA5 1995). But where, as here, the District Court satisfies itself that a vessel owner's right to seek limitation will be protected, the decision to dissolve the injunction is well within the court's discretion.

The Court of Appeals reasoned that the District Court also erred in dissolving the injunction because petitioner had no saved remedy in state court. The Court of Appeals apparently treated as dispositive petitioner's failure to demand a jury trial in state court. The jurisdictional statute, however, reserves to suitors "all other remedies to which they are otherwise entitled." 28 U. S. C. § 1333(1). Tracing the development of the clause since the Judiciary Act of 1789, it appears that the clause was designed to protect remedies available at common law. See, e. g., *The Hine* v. *Trevor,* 4 Wall. 555 (1867). We later explained that the clause extends to "all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved." *Red Cross Line,* 264 U. S., at 124. Trial by jury is an obvious, but not exclusive, example of the remedies

available to suitors. See *Lake Tankers, supra,* at 153; *Red Cross Line, supra,* at 123–125.

The Court of Appeals concluded that forum choice could not be a saved remedy under the saving to suitors clause because a claimant does not have the ability to control the forum in which his claim will be heard. 196 F. 3d, at 909. The prospect that a vessel owner may remove a state court action to federal court, however, does not limit a claimant's forum choice under the saving to suitors clause any more than other litigants' forum choices may be limited. We have previously refused to hold that admiralty claims, such as a limitation claim, fall within the scope of federal question jurisdiction out of concern that saving to suitors actions in state court would be removed to federal court and undermine the claimant's choice of forum. *Romero* v. *International Terminal Operating Co.,* 358 U. S. 354, 371–372 (1959). We explained that to define admiralty jurisdiction as federal question jurisdiction would be a "destructive oversimplification of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce." *Id.,* at 373. Moreover, in this case respondent raised a Jones Act claim, which is not subject to removal to federal court even in the event of diversity of the parties. See 28 U. S. C. § 1445(a) (incorporated by reference into the Jones Act, 46 U. S. C. App. § 688(a)). Respondent's arguments to limit and enumerate the saved remedies under the saving to suitors clause must fail in view of the consistent recognition by Congress and this Court that both state and federal courts may be proper forums for adjudicating claims such as petitioner's.

In sum, this Court's case law makes clear that state courts, with all of their remedies, may adjudicate claims like petitioner's against vessel owners so long as the vessel owner's right to seek limitation of liability is protected. Respondent seeks to invert that rule, making run of the mill personal

injury actions involving vessels a matter of exclusive federal jurisdiction except where the claimant happens to seek a jury trial. We reject that proposal and hold that the Court of Appeals erred in reversing the District Court's decision to dissolve the injunction.

The judgment of the United States Court of Appeals for the Eighth Circuit is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*