**NORFOLK DREDGING COMPANY,**
Plaintiff–Appellant,

v.

**John L. WILEY, Claimant–Appellee.**

No. 05–1331.

United States Court of Appeals,
Fourth Circuit.

Argued: Nov. 29, 2005.

Decided: March 3, 2006.

**ARGUED:** James Long Chapman, IV, Crenshaw, Ware & Martin, P.L.C., Nor-

folk, Virginia, for Appellant. Ralph Rabinowitz, Rabinowitz, Swartz, Taliaferro, Swartz & Goodove, P.C., Norfolk, Virginia, for Appellee. **ON BRIEF:** Stuart P. Sperling, Crenshaw, Ware & Martin, P.L.C., Norfolk, Virginia, for Appellant.

Before NIEMEYER, LUTTIG, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge LUTTIG and Judge TRAXLER joined.

## OPINION

NIEMEYER, Circuit Judge:

After John Wiley, a seaman, was injured aboard the tug *Pusher # 10*—a heavy line snapped and struck his face—the tug's owner, Norfolk Dredging Company, commenced this action in admiralty to limit its liability to the value of the tug, in accordance with the Limitation of Liability Act, 42 U.S.C. app. § 181, *et seq.*, and Supplemental Admiralty and Maritime Claims Rule F. The district court approved the value of the tug tendered by Norfolk Dredging and enjoined all other actions against Norfolk Dredging or the *Pusher # 10* arising from the incident, requiring claimants to file their claims in this action.

Wiley, the only person injured in the accident, filed a claim exceeding the tug's value, together with a motion to dissolve the injunction and stay this action to permit him to pursue his Jones Act claim and related admiralty claims in state court. In support of his motion, Wiley stipulated to exclusive federal jurisdiction over all Limitation of Liability matters, to the value of the *Pusher # 10,* and to Norfolk Dredging's right to limit liability. He also committed that he would not undercut Norfolk Dredging's Limitation of Liability right by asserting *res judicata* arguments based on

any state judgment that he might obtain. Wiley did not, however, agree that the value of the *Pusher # 10* alone was the maximum limit of Norfolk Dredging's liability; he alleged that pursuant to the "flotilla doctrine," the maximum limit of Norfolk Dredging's liability also included the value of three other vessels involved in the dredging operations when he was injured. Accordingly, Wiley filed a motion to increase the "limitation fund" to the value of all four vessels involved in the dredging operation.

Resolving the tension between Wiley's right to bring a Jones Act claim in state court and Norfolk Dredging's right to have its liability limited by a federal court under the Limitation of Liability Act, the district court entered an order dated February 22, 2005, dissolving the injunction and staying this action in accordance with the principles stated in *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001). The court found that Wiley's stipulations adequately protected Norfolk Dredging's right to limit its liability. The court temporarily denied Wiley's motion to increase the limitation fund through the application of the flotilla doctrine, reasoning that Wiley's flotilla doctrine argument would become moot if a state jury awarded Wiley less than the value of the *Pusher # 10.* The court permitted Wiley "to renew [his motion] in the limitation action, if necessary."

From the district court's interlocutory order dissolving its earlier injunction, Norfolk Dredging filed this appeal, contending that Wiley's stipulations do not adequately protect its federal right to limit its liability and that, in any event, Wiley waived his right to move the district court to dissolve the injunction by filing motions for affirmative relief and by pursuing discovery in this action.

For the reasons that follow, we conclude that the district court did not abuse its discretion in dissolving the injunction and therefore affirm.

## I

On November 27, 2003, Norfolk Dredging was dredging a docking basin at an ammunition depot in the port of Sunny Point, North Carolina, using four vessels that it owned—the tug *Pusher # 10*, the tug *Norfolk*, the hydraulic dredge *Charleston*, and the anchor barge *Diadapper # 2*. Wiley, a crew member on the *Charleston*, was serving as a deckhand on the *Pusher # 10* when a two-inch line parted and struck him in the face, seriously injuring him. No one else was injured in the incident.

Norfolk Dredging commenced this action on October 19, 2004, to limit its liability to the value of the *Pusher # 10*, pursuant to the Limitation of Liability Act, 46 U.S.C. app. § 181 *et seq.* Norfolk Dredging claimed that the value of the *Pusher # 10*, a 39–foot steel-hulled tugboat, was no greater than $80,000 and tendered that amount as a limitation fund. By order dated October 20, 2004, the district court approved Norfolk Dredging's proffered value and entered an injunction enjoining all suits against Norfolk Dredging or the *Pusher # 10* and directing all persons with claims arising out of the November 27, 2003 incident to file them in this action.

Wiley filed a claim in this action seeking $1.25 million as damages. He also filed a motion to increase the limitation fund, asserting that pursuant to the flotilla doctrine, Norfolk Dredging's limit of liability should be no less than the value of all four vessels involved in the dredging operation on November 27, 2003. He alleged that all four vessels were working together; all were owned by Norfolk Dredging; and all were contractually engaged in a common enterprise under a single command.*

Wiley also filed a motion to dissolve the injunction and stay the federal proceeding to allow him to pursue his claim under the Jones Act before a jury in state court. To support his motion, Wiley stipulated (1) that the district court had exclusive jurisdiction to decide all Limitation of Liability issues; (2) that the value of the *Pusher # 10* was $80,000, reserving his contention that the limitation fund should also include the value of the other three vessels pursuant to the flotilla doctrine; and (3) that he was the only claimant with respect to the November 27, 2003 incident. He also assured the court that he would not make any *res judicata* argument based on a judgment in state court that he might obtain and that he would not seek to enforce any such judgment in excess of the limitation fund as determined by the district court.

The district court concluded that Wiley's stipulations and undertakings would adequately protect Norfolk Dredging's Limitation of Liability right and accordingly granted Wiley's motion to dissolve the injunction, staying the federal proceeding to

---

* The flotilla doctrine is described in *Sacramento Navigation Co. v. Salz*, 273 U.S. 326, 329–30, 47 S.Ct. 368, 71 L.Ed. 663 (1927), which held that "any vessel transporting merchandise or property," as that phrase is used in the Harter Act, included both the tug and barge in dispute because both were "indispensable" to carrying out the maritime contract to transport goods and therefore were "in law, one vessel," and *Liverpool, Brazil &* *River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal*, 251 U.S. 48, 52, 40 S.Ct. 66, 64 L.Ed. 130 (1919), which rejected the flotilla doctrine in a Limitation of Liability action where a barge and a disabled tug were lashed to the sides of an actively powered tug because only the powered tug was "actively responsible" for the collision, even though the barge was the vessel that collided with the claimant.

permit Wiley to pursue his Jones Act claim in a separate action before a jury in either state or federal court. The court denied Wiley's motion to increase the limitation fund under the flotilla doctrine because the motion "may be rendered moot if the claimant's judgment in state court does not exceed the Limitation Fund as it now stands." The court agreed, however, to reconsider the flotilla doctrine argument if Wiley's Jones Act judgment were to exceed $80,000 and Wiley again filed the motion to increase the fund.

From the district court's order of February 22, 2005, dissolving its October 20, 2004 injunction and staying this action, Norfolk Dredging filed this interlocutory appeal. *See* 28 U.S.C. § 1292(a)(1).

## II

■ Norfolk Dredging contends that the district court's February 22, 2005 order dissolving its earlier injunction "contravenes the fundamental purpose of the Limitation Act—to protect shipowners' rights to limited liability." Because Wiley never stipulated to the value of the limitation fund and therefore failed "to file *all* of the required stipulations" (emphasis added), Norfolk Dredging argues that its right to limited liability is left unprotected. Although Wiley did agree that the *Pusher #10* was properly valued at $80,000, he nonetheless contended that the fund should also include the value of Norfolk Dredging's three other vessels engaged in the dredging operation at the time he was injured. Norfolk Dredging asserts that the district court abused its discretion in deferring its ruling on the limitation fund and staying this action and that we should reverse the district court's order and direct the court "to adjudicate the issues of liability and limitation."

Wiley contends that the district court does not, under the principles of *Lewis,* have to decide the limitation fund's value as a condition of exercising its discretion to dissolve the injunction. He argues:

> If it is necessary to come back to the limitation court to decide limitation of liability and the true amount of the limitation fund, including the flotilla doctrine, the Federal District Court can be relied on to make appropriate findings and decisions. . . .

Thus, the issue presented is whether the district court's order permitting Wiley to pursue his Jones Act claim in a separate action improperly denied Norfolk Dredging its Limitation of Liability right, particularly when the district court postponed making a determination of the amount of the limitation fund. We review for abuse of discretion. *See Lewis,* 531 U.S. at 440, 121 S.Ct. 993.

The Jones Act gives Wiley the right to redress his personal injury in state or federal court, before a jury or not, as he elects. *See* 46 U.S.C. app. § 688. Consistent with this array of choices available to a Jones Act claimant, the admiralty jurisdiction of federal courts is limited so as to save to seamen their remedies. Section 1333 of Title 28 provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*

28 U.S.C. § 1333(1) (emphasis added).

At the same time, the Limitation of Liability Act gives a shipowner the right to limit its liability through a proceeding in federal court in admiralty. *See* 46 U.S.C. app. § 181 *et seq.;* Supplemental Admiralty and Maritime Claims Rule F. The Act provides that a shipowner's liability for claims such as Wiley's shall not "exceed the amount or value of the interest of such

owner in such vessel, and her freight then pending," so long as injuries arose "without the privity or knowledge of such owner." 46 U.S.C. app. § 183(a). Congress passed the Limitation of Liability Act "to assist shipowners by placing them in parity with European (and particularly English) shipowners who had long enjoyed the benefits of limiting their liability for marine disasters." *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 448 (4th Cir. 1999). The policy underlying liability limitation was "to induce the heavy financial commitments the shipping industry requires by mitigating the threat of a multitude of suits and the hazards of vast, unlimited liability as a result of a maritime disaster." *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 414, 74 S.Ct. 608, 98 L.Ed. 806 (1954).

Recognizing the tension between the injured seaman's right to trial in a state or federal court before a jury, or not, for his Jones Act claim and related admiralty claims and the right of a shipowner to limit its liability in federal court to the value of the vessel, the Supreme Court has approved a procedure that permits the seaman to pursue his suit and, at the same time, permits the shipowner to limit its liability on that claim to the value of the ship. *See Lewis*, 531 U.S. 438, 121 S.Ct. 993, 148 L.Ed.2d 931; *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); *Ex parte Green*, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212 (1932); *Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931).

In *Lewis*, the Supreme Court's most recent visit to this issue, the seaman, who tripped over a wire on a ship and hurt his back, sued the shipowner in state court for negligence under the Jones Act, unseaworthiness of the ship, and maintenance and cure. The shipowner filed a separate complaint in federal court under the Limita-

tion of Liability Act to limit the seaman's claim to the value of the ship. The district court approved the shipowner's proposed value and enjoined the filing or prosecution of any other claims. After the seaman stipulated to facts and undertakings that would, in the end, limit his liability to the value of the vessel, the district court dissolved its injunction and permitted the seaman to pursue his state court action. In affirming the district court's decision to dissolve the injunction, the Supreme Court stated:

> [W]e believe that the District Court properly exercised its discretion in dissolving the injunction that prevented petitioner from pursuing his claims in state court. The District Court, guided by our prior cases, attempted to reconcile petitioner's right to his remedy under the saving to suitors clause with respondent's right to seek limited liability under the Limitation Act. The court dissolved the injunction against the state court proceedings after it concluded that respondent's right to seek limitation of liability would be adequately protected. Respondent's rights were protected by petitioner's stipulation that his claim did not exceed the limitation fund, petitioner's waiver of any defense of res judicata with respect to limitation of liability, and the District Court's decision to stay the Limitation Act proceedings pending state court proceedings.

*Lewis*, 531 U.S. at 451–52, 121 S.Ct. 993. Emphasizing its holding that the seaman's personal injury action should be permitted to go forward so long as the shipowner's Limitation of Liability right was protected, the Supreme Court stated,

> In sum, this Court's case law makes clear that state courts, with all their remedies, may adjudicate claims like petitioner's against vessel owners *so long as the vessel owner's right to seek limi-*

*tation of liability is protected.* Respondent seeks to invert that rule, making run of the mill personal injury actions involving vessels a matter of exclusive federal jurisdiction except where the claimant happens to seek a jury trial. We reject that proposal. . . .

*Id.,* 531 U.S. at 455–56, 121 S.Ct. 993 (emphasis added).

In this case, the district court relied on a series of stipulations that Wiley presented to the court in connection with his motion to dissolve the injunction and stay the limitation action. Wiley stipulated to the district court's exclusive jurisdiction over Norfolk Dredging's Limitation of Liability action; he waived his right to use any state court judgment that he might obtain to preclude Norfolk Dredging from litigating Limitation of Liability issues in federal court; he agreed to the value of the *Pusher # 10;* and he promised not to enforce any state court judgment exceeding that amount until the federal court considered Norfolk Dredging's limitation claim and, if he raised it again, his motion to increase the fund to include the value of the flotilla. Essentially, Wiley agreed that Norfolk Dredging's liability will be limited to the amount of the limitation fund in whatever amount the district court fixes.

In providing these stipulations, Wiley agreed to the same stipulations that were presented to the district court in *Lewis* except as to the specific value of the limitation fund. Norfolk Dredging contends that the absence of a stipulation as to the value of the limitation fund makes Wiley's stipulations inadequate to protect Norfolk Dredging's Limitation of Liability claim.

Norfolk Dredging has not, however, demonstrated to us how the failure of Wiley to agree to the *amount* of the limitation fund prejudices its Limitation of Liability right. Stipulating that the fund, whatever its amount, is the limit of Norfolk Dredging's liability insulates Norfolk Dredging from overpaying just as would a stipulation to its precise amount. We cannot see how saving for another day the question of Norfolk Dredging's amount of liability prejudiced its general right to limit liability. All the district court did in this case was effectively to postpone, and thereby possibly avoid, resolving the novel question whether to apply the flotilla doctrine to determine the size of the limitation fund.

Moreover, postponing the determination of the final value of the limitation fund in a Limitation of Liability action is consistent with the broad power of the district court to manage its cases and to reserve the determination of any important, yet potentially irrelevant, issue until later in the proceedings. Even in *Lewis,* the district court had not yet determined whether the shipowner was foreclosed from limiting its liability due to its knowledge of or privity to the incident. And the Rules expressly anticipate that the district court's initial approval of an amount for the limitation fund can be changed later upon the motion of the claimant. *See* Supplemental Admiralty and Maritime Claims Rule F(7) (authorizing the claimant by motion to have the limitation fund increased). In fact, postponing a decision on the final amount of the limitation fund was the precise procedure approved in *Two "R" Drilling Co. v. Rogers,* 943 F.2d 576 (5th Cir.1991).

In *Two "R" Drilling,* the Fifth Circuit approved the district court's decision to dissolve an injunction to allow state proceedings to continue even though the parties could not agree on the values of either of the two vessels in dispute. *Id.* at 578. The claimant stipulated to federal jurisdiction, waived application of *res judicata* principles, and agreed not to enforce any state judgment exceeding the limitation fund, which was initially constituted ac-

cording to the shipowner's stated value of the two vessels, until the federal court could resolve the value of the ships. The Fifth Circuit, as well as the district court before it, held that these stipulations, even in the absence of a final determination of the fund's amount, were sufficient to protect the shipowner's right to limit liability.

Because Wiley has agreed that Norfolk Dredging's liability will be limited to the value of the fund, in whatever amount the district court determines, the Limitation of Liability right is preserved. Wiley agreed to the jurisdiction of the federal court to decide the Limitation of Liability claim, and he agreed that whatever judgment he might obtain in state court will not be used to attack the Limitation of Liability claim, either through principles of *res judicata* or by enforcement of the state judgment. Indeed, Wiley has agreed that the district court retain jurisdiction until Wiley's personal injury claim has been determined. Thus, should Wiley's stipulations provide inadequate protection in some unforeseen way, the district court has continuing jurisdiction to correct any deficiencies. *See Lewis,* 531 U.S. at 453–54, 121 S.Ct. 993 ("[O]ut of an 'abundance of caution,' the [district] court stayed the limitation proceedings so that it could act if the state court proceedings jeopardized the vessel owner's rights under the Limitation Act").

The district court acted well within its discretion in staging the proceedings by staying this action and allowing a state court action to proceed, postponing until later the final determination of what the precise amount of the limitation fund should be.

### III

█ Norfolk Dredging also contends that Wiley has waived his right to move for the dissolution of the injunction and for a stay of this action because he has sought affirmative relief in this action by filing a motion to increase the fund and by initiating discovery. Norfolk Dredging urges that we treat Wiley like a defendant whose special appearance for personal jurisdiction is converted to a general appearance upon seeking affirmative relief or like a plaintiff who has waived his right to remand in a removed case.

Norfolk Dredging's analogies are, however, inapt. Wiley has not objected to federal jurisdiction while taking advantage of it. Indeed, he has stipulated to exclusive federal jurisdiction for purposes of deciding the Limitation of Liability issues. Thus, Wiley's motion to increase the fund and his initiation of discovery are consistent with his efforts to advance his position in the federal Limitation of Liability case even as he also seeks to pursue a parallel state proceeding.

To the extent that there is potential for abuse of the federal process, as Norfolk Dredging suggests, by protracting the proceedings or by taking advantage of discovery in the federal proceedings in anticipation of filing a state action, Norfolk Dredging is free to assert those claims in the district court in the appropriate circumstances. We do not suggest, however, that based on the record before us, there is evidence of either undue protraction of the federal action or abuse of discovery.

### IV

Finally, Wiley requests that we impose sanctions on Norfolk Dredging for filing a frivolous appeal. We do not, however, find Norfolk Dredging's appeal frivolous and therefore deny his request for attorneys fees and costs.

For the reasons given, the district court's order of February 22, 2005 is

*AFFIRMED.*