### In Re: ASSOCIATION OF MARYLAND PILOTS.

**Civil No. AMD 08–1819.**

United States District Court, D. Maryland.

Feb. 4, 2009.

James W. Bartlett, III, Semmes, Bowen, and Semmes, PC, Baltimore, MD, for Plaintiff.

Robert E. Joyce, Law Office of Robert E. Joyce, Baltimore, MD, Michael Harris Bereston, Law Office of Michael Bereston, Annapolis, MD, for Defendant.

### MEMORANDUM OPINION

ANDRE M. DAVIS, District Judge.

The Association of Maryland Pilots ("the Association") has filed a complaint for exoneration from or limitation of liability pursuant to the Exoneration and Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.* ("Limitation Act"). William S. Dize ("Dize") is the sole claimant appearing in the action. Now before the court is Dize's

motion for a stay of the action pending resolution of Dize's parallel state court personal injury action instituted pursuant to the Jones Act. The issue presented is whether a Jones Act claimant in a single claimant case must stipulate to litigating *exoneration* of liability, as well as *limitation* of liability, in federal court to satisfy the requirements of the Limitation Act, or whether, instead, the claimant may stipulate purely to *limitation* of liability. The issues have been fully briefed and no additional hearing is necessary. For the reasons stated below, I conclude that the claimant need not stipulate to exoneration of liability to satisfy the requirements of the Limitation Act.

## I.

### A.

Dize was employed by the Association as an Assistant Station Manager. He worked every other week, and during his "on" weeks, he worked 24 hours a day, seven days a week. The parties dispute the type of work Dize performed and specifically how much time he spent doing credible seaman activities, but, indisputably, he generally worked in and around boats, the water, and the station.[1] In early June 2007, Dize and a crew were assigned to sandblast old paint from the bottom of the Annapolis Pilot, an Association-owned boat. The boat was dry-docked at the time. The Association provided all of the tools and safety equipment. It also provided the abrasive, a chemical comprised primarily of coal dust called Black Beauty.

Alex Buckler, an Association employee, provided Dize with safety equipment. Dize characterizes the gear as "essentially a Tyvek painting suit[,]" consisting of a painter's mask, a protective canvas hood, and a some type of protective clothing. (Mot. to Dismiss at 2.) Buckler allegedly told Dize that he had requested a more protective suit (with a self-contained air supply specifically designed for sandblasting), but that his request was denied as too costly.

Dize refused to wear the hood portion because he is claustrophobic, a condition of which, he says, his employer well knew. Nevertheless, Dize performed the work, wearing "the mask and helmet for as much as possible during the work, which went on for approximately one week." (Compl. at ¶ 7.) James Merryweather ("Merryweather"), the Operations Manager for the Association and Dize's supervisor, came to the jobsite and worked with Dize for approximately a day and a half. During this time, Dize complained to Merryweather about his claustrophobia and the fact his suit did not protect him from the sand or dust.

---

1. In support of its motion for summary judgment, the Association argues that Dize spent less than 30% of his time doing credible seaman activities. It defines Dize's duties as a manager, with responsibilities such as running the station, working with local vendors, and supervising the housekeeping crew. (Mem. Supp. Mot. Summ. Jud. at 2.) The Association alleges that Dize worked on the water or ashore in the service of vessels for only 499.5 hours in 2007, or 23% of the time. (*Id.* at 2.) Specifically, Merryweather, the Operations Manager for the Association and Dize's supervisor, attests that Dize spent no more than 30 minutes daily, in service of docked or onshore vessels. The Association also submitted the log for all pilot transfers.

   Dize rejoins that he spent over 30% of his time engaging in credible seaman activities. He attests that he spent "on most days ... at least 3 to 4 hours performing ... shoreside support tasks while not on the water." (Dize Aff.) He defines his responsibilities as more like a handyman, with responsibilities for working on boats, maintaining boats, and rebuilding boats. (*Id.*) Dize claims that the Merryweather affidavit and logs left out the "Haul Out Log" and the "Maintenance log," both of which increase his credible seaman activities.

(Mot. to Dismiss at 3.) Merryweather allegedly told Dize that if "he couldn't do the job he would find someone who could." (*Id.*)

On or about June 15, 2007, agents from the Maryland Department of the Environment shut down the sandblasting operation. According to Dize, the operation was terminated because the coal dust was polluting the nearby waterways and spreading black soot all over a nearby private marina. (Compl. at ¶ 8.) Over the next several months, Dize began to have increased difficulty breathing and sought medical attention. On January 14, 2008, he was diagnosed with silicosis of the lungs and was classified as disabled. (*Id.* at ¶ 9–10.) Since his diagnosis, Dize has not been able to breathe without assistance. (Mot. to Dismiss at 3.)

### B.

On May 22, 2008, Dize filed an action in the Circuit Court for Baltimore City under the Jones Act for personal injuries. 46 U.S.C. § 30104 (formerly 46 App. U.S.C.A. § 688). He alleged that the Association was negligent when it did not provide him with a safe work environment or the proper safety equipment to sandblast the paint from the bottom of a boat.

Less than two months later on July 14, 2008, the Association filed this action seeking exoneration from or limitation of liability pursuant to 46 U.S.C. § 30501 *et seq.*

The Association contends that it is entitled to exoneration or limitation of liability because it did not have knowledge or privity of any possible occurrence, loss, damage or injury to Dize and requested that the total liability be exonerated or limited to the value of the vessel. The complaint also included a tentative assessment of the vessel, a 48 foot pilot boat, at $37,000.

On September 4, 2008, Dize filed a motion to dismiss. Therein, Dize asserted that the Association was not entitled to limitation or exoneration of liability because it plead no facts to show a lack of negligence and/or a lack of knowledge. The Association countered by questioning Dize's seaman status and alleging that it included sufficient facts to state its claim. Then, on September 24, 2008, the Association filed a motion for summary judgment, explicitly disputing Dize's seaman status under the temporal requirements of the Jones Act. In response, Dize reaffirmed his seaman status and moved to strike the motion for lack of "subject matter jurisdiction," arguing that this court's jurisdiction extends to the limitation of liability issue but not the negligence or seaman status issues. Dize also reiterated that the Association failed to demonstrate a lack of privity or knowledge of its negligence.

On December 4, 2008, I conducted a hearing, in consequence of which I denied the Association's motion for summary judgment.[2] Additionally, Dize abandoned his motion to dismiss.[3] Instead, at my

---

**2.** The issue of whether Dize qualifies as a seaman under the Jones Act should be litigated in plaintiff's preferred forum, and here, Dize chose to litigate in state court. Jones Act plaintiffs may select their choice of forum and such claims cannot be removed to federal court. *See infra* p. 918. By filing a motion for summary judgment on the merits of Dize's underlying Jones Act claim in a limitation proceeding, the Association made a thinly-veiled attempt to circumvent Dize's right to litigate his Jones Act claim in his preferred forum.

**3.** To be sure, the Association's complaint contained scant factual support regarding the notice and privity issues. Additionally, it is clear that some level of management knew about the inadequacy of the safety equipment inasmuch as Merryweather, the Operations Manager for the Association, worked side-by-side with Dize for approximately a day and a

invitation, he requested that the court: (1) stay the federal court proceeding; and (2) dissolve the injunction against the state court proceeding so that the parties could litigate the Jones Act claim in state court, plaintiff's preferred forum. I orally granted the request, conditioned on Dize's agreement to stipulate to exclusive federal jurisdiction on all limitation of liability issues pursuant to the Limitation Act. Thereafter, the parties failed to reach agreement on parameters of the necessary stipulation. They specifically dispute whether the Limitation Act requires Dize to stipulate to litigating both exoneration of liability and limitation of liability exclusively in federal court, or merely requires a stipulation on the limitation issue.

## II.

The Merchant Marine Act of 1920 (the "Jones Act") essentially took the remedies available to railroad employees under the Federal Employers' Liability Act (FELA) and extended them to merchant seaman. Under the Jones Act, a *seaman* may sue a shipowner for personal injury: "A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The word seaman is a term of art and is subject to frequent dispute.

Pursuant to 28 U.S.C. § 1333 and case law, Jones Act claimants have the option of filing their claims in state or federal court. The statute states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . .

any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" 28 U.S.C. § 1333(1) (emphasis added). The Supreme Court has interpreted "the savings-to-suitors clause" as preserving concurrent jurisdiction over some admiralty and maritime claims, including Jones Act cases. *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 444, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001).

■ Thus, although a Jones Act defendant may not remove a case from state court, the defendant can litigate one aspect of such a dispute in federal court. The Limitation Act permits a shipowner to bring a claim in federal court to limit the damages for certain types of claims to the "value of the interest of such owner in such vessel." 46 U.S.C. § 30511.[4] Under the Limitation Act, a ship-owner is only entitled to a limitation of liability if the shipowner did not have knowledge or privity of the fault causing the loss. 46 U.S.C. § 30506. Courts use a two-step analysis in administering this regime. First, the claimant has the burden of showing what acts of negligence caused the harm. Then, the burden shifts to the vessel owner to prove that he lacked knowledge of or privity to the negligence. *Id.*; *In Re Bay Runner Rentals,* 113 F.Supp.2d 795, 798 (D.Md.2000) (citing *Empresa Lineas Maritimas Argentinas, S.A. v. U.S.,* 730 F.2d 153, 155 (4th Cir.1984)).

Parties in Jones Act cases are often concerned with avoiding issue and claim preclusion problems. This is because Jones Act parties litigate in both jurisdic-

---

half while Dize sandblasted the boat. (Dize's Aff. at 2.)

4. The jurisdictional aspect of the Limitation Act states: "(a) In general.—The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after the claimant gives the owner written notice of a claim." 46 U.S.C. § 30511.

tions whenever a plaintiff files a claim in state court and a defendant files a limitation action in federal court. In *Lewis v. Lewis & Clark Marine, Inc.,* the Supreme Court balanced the rights of shipowners to seek limitation of liability in federal court and the right of claimants to litigate their Jones Act claim in state court under the saving-to-suitors clause of 28 U.S.C. § 1333. *Lewis,* 531 U.S. at 444, 121 S.Ct. 993. The Court held that Jones Act plaintiffs may proceed with their claims in state court before addressing the limitation of liability issue in federal court if certain conditions are met. The first condition is that either there must be only a single claimant or the total claims against the shipowner must not exceed the value of the limitation fund. *Id.* at 451, 121 S.Ct. 993. The second condition is that the parties must agree to stipulations that protect the shipowner's right to litigate the limitation of liability issue in federal court. *Id.*

The Fourth Circuit applied *Lewis* in *Norfolk Dredging Co. v. Wiley,* 439 F.3d 205, 207 (4th Cir.2006). There, the Court held that the district court did not err when it dissolved an injunction of a state court proceeding and stayed the federal court limitation action, even though the federal court postponed determining the final value of the limitation fund. In the underlying case, the seaman stipulated to federal jurisdiction over all limitation of liability matters but did not stipulate to the amount of the limitation fund, arguing that it should include several boats under the flotilla doctrine. *Id.* at 107–08.

The Fourth Circuit reviewed whether the district court's order permitting the seaman to pursue his Jones Act claim in state court improperly denied the shipowner its limitation of liability right in light of the district court's decision to postpone its determination of the amount of the limitation fund. *Id.* at 208. The Court upheld the district court's decision, holding that the federal court's postponement did not prejudice the limitation of liability right in permitting the seaman to proceed with the claim in state court. *Id.* at 209–211.

As in *Norfolk Dredging,* Dize may litigate his claim in state court as long as he adequately stipulates to protect the Association's right to limit its liability in this court. Clearly, under *Norfolk Dredging,* that stipulation need not include the precise amount of the limitation fund and the parties do not dispute that issue. Here, the parties dispute whether Dize must stipulate to litigating *exoneration* of liability, as well as limitation of liability, in federal court to satisfy the requirements of the Limitation Act, or whether he satisfies the act by stipulating only to preserve litigation of the *limitation* of liability.

### III.

■ The issue of whether a claimant must stipulate to litigate exoneration of liability *and* limitation of liability in federal court is an issue of first impression in the Fourth Circuit. Presumably because there is no Fourth Circuit precedent, the Association cites cases from the Fifth Circuit in support of its assertion that Dize must stipulate to exoneration of liability. In both its informal correspondence and its formalized response to the Dize's motion to stay this action, the Association cites three cases: *Texaco, Inc. v. Williams,* 47 F.3d 765, 769 (5th Cir.1995); *In re T. Baker Smith & Son, Inc.,* 1998 A.M.C. 2647, 2649–50 (E.D.La.1998); and *In re McAllister Towing of Virginia, Inc.,* 999 F.Supp. 797, 802 (E.D.Va.1998). For example, the Association wrote, in its initial correspondence:

Examples of decisions demonstrating that the stipulations should address both limitation of liability and exoneration from liability are *Texaco, Inc. v.*

*Williams,* 47 F.3d 765, 769 (5th Cir. 1995); *In re McAllister Towing of Virginia, Inc.,* 999 F.Supp. 797, 802 (E.D.Va.1998); and *In re T. Baker Smith & Son, Inc.,* 1998 A.M.C. 2647, 2649–50 (E.D.La.1998) ("To protect a vessel owner's rights, a single claimant must stipulate to waiving any claim of res judicata on issues relevant to limitation of liability and exoneration in both federal and state courts.").

These citations are misleading and the accompanying arguments are inapt. In fact, the Fifth Circuit has explicitly held that a stipulation as to exoneration is **not required** under the Limitation Act in order for a district court to dissolve a stay of a state court proceedings. *In re Tetra Applied Technologies LP,* 362 F.3d 338 (5th Cir.2004) (holding that claimant's stipulation to limitation of liability was adequate to protect owner's rights under the Limitation Act because an exoneration stipulation is not required to protect a shipowner's rights under the Limitation Act.); *In re Tidewater, Inc.,* 249 F.3d 342, 346 (5th Cir.2001) (holding that an exoneration stipulation is not required in order to protect a shipowner's rights under the Limitation Act). Moreover, the court in *Tidewater* clearly stated that *Texaco v. Williams,* a case cited by the Association, has been overruled, and that the district courts in the Fifth Circuit that have required a stipulation regarding exoneration are wrong:

> Tidewater argues that the stipulations are inadequate to protect its rights under the Limitation Act [because] the stipulations fail to protect its right to exoneration. . . .

> . . . .

> An exoneration stipulation is not needed. On two occasions, this Court has reserved ruling on the issue of whether an exoneration stipulation is required before a stay may be lifted. *See Odeco Oil & Gas Co. v. Bonnette,* 74 F.3d 671, 675 n. 7 (5th Cir.1996); *Texaco v. Williams,* 47 F.3d 765, 769 (5th Cir.1995). District courts in this circuit are divided on the issue. . . . Those cases that do not require an exoneration stipulation stand on firmer ground.

*Tidewater,* 249 F.3d at 346 (some internal citations omitted). Lastly, the case from the Eastern District of Virginia cited by the Association provides no support for its assertions.[5]

*In re Tidewater* explains in clear terms the context of the conflict between the Limitation Act and the Federal Rules of Civil Procedure. That court's analysis is worth quoting at length:

> The Limitation Act itself does not expressly provide the shipowner with a right to exoneration. However, The Federal Rules of Procedure [Rule F] provide that a limitation claimant "may demand exoneration." In *Falcon Inland,* the court noted that Rule F uses the permissive verb "may" and reasoned that the word "shall" would have been used if the exoneration issue were reserved exclusively to federal courts. *In re Falcon Inland, Inc.,* 2 F.Supp.2d 835, 836 (E.D.La.1998). Additionally, since the Limitation Act itself does not grant a right to exoneration, the tension is between the saving to suitors clause and Rule F, not the Limitation Act. Supplemental Rules cannot enlarge the sub-

---

**5.** *See In re McAllister Towing of Virginia, Inc.,* 999 F.Supp. 797, 802 (E.D.Va.1998) (holding that claimants must protect the shipowner's right to limit its liability by stipulating that the federal courts shall have exclusive juris- diction over limitation of liability issues, and that shipowners may seek exoneration from liability *but not* that claimants must stipulate to exclusively litigate exoneration of liability in federal court).

stantive rights conferred on shipowners by the Limitation Act. *See* 28 U.S.C. § 2072(b). In *Lake Tankers Corp. v. Henn,* the Supreme Court said, "we read no other privilege for the shipowner into [the Limitation Act's] language over and above that granting him limited liability." 354 U.S. 147, 150, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957).

*Id.* at 347 (some internal citations omitted).

The court in *Tidewater* ultimately held that "an exoneration stipulation is not required before the stay can be lifted" because "requiring an exoneration stipulation would enlarge shipowners' rights under the Limitation Act and abridge claimants' rights under the savings to suitors clause." *Id.* The court explained that to do otherwise would be illogical, as it would require the court to use a rule of federal procedure to truncate a substantive right to pursue a cause of action. *Id.*

I conclude the analysis in *Tidewater* is most likely to be embraced by the Fourth Circuit when it considers the question presented. *Tidewater* explicitly undercuts the Association's contentions and provides a clear and persuasive argument for why Dize is **not** required to stipulate to exoneration of liability. I conclude, therefore, that Dize is not required to stipulate to exoneration of liability but rather, need only stipulate to limitation of liability.

### IV.

For the reasons stated, an appropriate Order shall be entered approving the stipulation proposed by Dize (attached), staying and administratively closing this action, and permitting the state case to proceed.

### *STIPULATION*

NOW COMES, the Claimant, William S. Dize, by and through undersigned counsel, who submit the following stipulations to be filed in this limitation proceeding:

1. Claimant, William S. Dize, concedes that petitioner, Association of Maryland Pilots, is entitled to and has the right to litigate all issues relating to limitation of liability pursuant to the provisions of 46 U.S.C. §§ 30501–30512 in this Court, but claimants specifically reserve the right to deny and contest in this Court all assertions and allegations made by Association of Maryland Pilots in the Complaint for Limitation filed herein.

2. Claimant will not seek in any state court or federal court, in which a jury trial has been demanded, any judgment or ruling on the issue of Petitioner's right to limitation of liability; and hereby consent to waive any claims of *res judicata* relevant to the issue of limitation of liability on any judgment that may be rendered in both federal and state courts.

3. Claimant herein, while not stipulating to or agreeing to the sum contained in Petitioner's stipulation for value as the combined value of petitioner's interest in the M/V Annapolis Pilot and her pending freight, hereby stipulate that in the event there is a judgment or recovery in any state court or common law forum in excess of Petitioner's stipulation of a value, whether against the Association of Maryland Pilots or any other liable party or parties who may make a cross-claim over and against Association of Maryland Pilots, in no event will claimants seek to enforce that excess judgment or recovery insofar as the same may expose the M/V Annapolis Pilot to liability in excess of Petitioner's stipulation of value pending the adjudication of the complaint of limitation of liability in this Court.

4. Claimant herein stipulates and agrees that if petitioner is held responsible for attorneys fees and costs which may be assessed against it by a co-liable defendant

party seeking indemnification for attorneys fees and costs, such claims shall have priority over the claim of claimants herein.

5. In order to afford sufficient protection from excess liability arising out of third party claims where indemnification or contribution is or may be sought by other defendants pending the resolution of all claims in the limitation proceeding, in the event there is a judgment or recovery by claimant in any state court action or proceeding of any type in excess of the value of any limitation fund determined in accordance with 46 U.S.C.App. Section 185, in no event will claimant seek to enforce such excess judgment or recover against Association of Maryland Pilots insofar as such enforcement may expose Association of Maryland Pilots liability in excess of the limitation fund, until such time as there has been an adjudication of limitation by this Court which has the exclusive jurisdiction and authority to determine all issues relevant to Association of Maryland Pilots claim for limitation of liability.