## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

CYNTHIA I. SHUSTER and MICHAEL J.
SHUSTER,

        Plaintiffs,

        v.

BARRACUDA CHARTERS, LLC and
CAPTAIN KENNETH KLEIN,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. ST-18-CV-009

ACTION FOR DAMAGES

**JURY TRIAL DEMANDED**

Cite as 2020 VI Super 16

## MEMORANDUM DECISION

¶ 1.    **THIS MATTER** is before the Court upon "Plaintiffs' Motion In Limine To Exclude Testimony" filed on November 5, 2019. Defendant Barracuda Charters, LLC (hereinafter "Barracuda Charters or Defendant") filed their "Opposition to Plaintiffs' Motion in Limine" on November 18, 2019. Plaintiffs filed a reply on November 21, 2019. Plaintiffs' (hereinafter "the Shusters or Plaintiffs") motion seeks to exclude testimony pertaining to three (3) issues: 1.) Defendant's expert Thomas Danti's reference to a U.S. Coast Guard report's respective findings of the incident, 2.) Defendant Barracuda Charters' reference to the "Obama Era Amendment" codified at title 46 U.S.C.S. § 4105(b)(1), and 3.) Defendant's request for limitation of liability, if Defendant is deemed negligent.

### I.    LEGAL ANALYSIS

¶ 2.    Defendant has no objection to the exclusion of its expert's opinion in reference to the findings of the U.S. Coast Guard report (regarding Captain Kenneth Klein), therefore that issue has been resolved and Barracuda Charters is hereby precluded from referencing, producing, or eliciting any evidence or testimony of that nature.

## A. MARITIME OR ADMIRALTY LAW ANALYSIS

¶ 3.      In order to rule on the second issue in the pending motion, this Court must address certain procedural and substantive issues, specifically: (1.) whether the case sounds in maritime or admiralty law, (2.) whether this Court has jurisdiction to adjudicate a maritime cause of action, and (3.) whether admiralty law or Virgin Islands law governs this case.

### i.      Whether the Case Sounds in Maritime or Admiralty Law

¶ 4.      The Supreme Court of the United States in *Grubart v. Great Lakes Dredge & Dock Co,* 513 U.S. 527, 533-34 (1995) articulated a 2-prong test to determine whether a case sounds in admiralty or maritime law. The first prong, the locality test, requires that the incident occurred on navigable waters or be caused on land by a vessel that traverses navigable waters.[1] This test is easily met here as Plaintiffs' injuries occurred while aboard Defendant's vessel, the *M/V Cuda,* and on the navigable waters off the island of St. Thomas.[2] The second prong, the maritime connection test, is further divided into two sub-parts: first, whether the incident has a potentially disruptive impact on maritime commerce, and second, whether the character of the activity, giving rise to the incident, shows a substantial relationship to traditional maritime activity.[3]

¶ 5.      The first sub-part of the maritime connection test requires a more in-depth inquiry. In finding that courts have "often liberally construed"[4] potentially disruptive impact to "encompass cases involving swimmers injured by boats, recreational vessels that burned out of control,"[5]

---

[1] *Grubart v. Great Lakes Dredge & Dock Co,* 513 U.S. 527, 533-34 (1995); *Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 131 (3d. Cir. 2002).

[2] *See generally* Complaint at paras. 26-41.

[3] *Grubart,* 513 U.S. at 534. *See also Sisson v. Ruby,* 497 U.S. 358, 363-64 (1990).

[4] *Leach v. Cruise Ship Excursions, Inc.,* 2019 VI SUPER 110U, at *19 (V.I. Super. Ct. 2019).

[5] *See Donnelly v. Slingshot Sports LLC,* 605 F. Supp. 2d 613, 617 (D. Del. 2009). *See also Sisson,* 497 U.S. at 362 (this case involves a fire that began on a noncommercial vehicle but such a fire, with certainty, "has a potentially disruptive impact on maritime commerce"); *Roane v. Greenwich Swim Comm.,* 330 F. Supp. 2d 306 (S.D.N.Y. 2004) (a situation where passengers on a boat in the Long Island Sound gave attention to saving a swimmer in distress… this action may well distract them from the "hazard posed by other approaching boats").

people injured while undertaking recreational activities in the waters,[6] collision between pleasure

boats,[7] as well as injured passengers aboard ocean-going passenger vessels and cruise lines,[8] this

Court rules that the potentially disruptive sub-part is ultimately satisfied. Plaintiff clearly suffered

an injury while aboard Defendant's vessel when the *M/V Cuda* apparently hit a rough wave that

caused Plaintiff Cynthia Shuster to rise into the air and land on her hips causing her injury.[9] The

Court finds that tending to such an injury may cause: 1.) delays to other boats in the area, 2.) the

vessel to alter its course, 3.) crew members to be distracted from their other duties, and 4.) other

vessels to divert from the area in order to get the necessary medical attention and personnel to Mrs.

Shuster.[10] These factors taken together could have a potentially disruptive impact on maritime

commerce.

¶ 6.    The second sub-part, whether the activity bears a substantial relationship to traditional

maritime activity, is also easily satisfied. Courts have routinely held that the transport and carriage

of passengers for compensation or recreational purposes "constitutes quintessential maritime

activity affecting commerce."[11] As a result, Defendant was engaged in the business of transporting

Plaintiffs, on the waters of St. Thomas, for the recreational purpose of snorkeling, in exchange for

---

[6] *See e.g. Donnelly*, 605 F. Supp. 2d at 614- 15 (ruling that a kiteboarding injury could lead to a disruption in maritime commerce); *Szollosy v Hyatt Corp.*, 208 F. Supp. 2d 205 (D. Conn. 2002) (noting that a jet ski accident had a potentially disruptive impact because the collision could have made commercial travel difficult due to the need to provide medical treatment of the injured person).

[7] *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675 (1982).

[8] *See e.g. Gibbs*, 314 F.3d at 129 (a case where Gibbs, a passenger, "suffered second degree burns on the soles of his feet when he stepped onto the hot surface of the deck of the Carnival vessel, the Destiny"); *Oran v. Fair Wind Sailing, Inc.*, No. 08-0034, 2009 U.S. Dist. Lexis 110350, at *7 (D.V.I. Nov. 23, 2009) (a case involving a slip and fall of a passenger while aboard an ocean-going sailing school catamaran); *Piché v. Stockdale Holdings, LLC*, No. 2006-79, 2009 U.S. Dist. Lexis 24237, at *2- 3 (D.V.I. Mar. 24, 2009) (case involves an injured passenger onboard a cruise ship excursion boat); *Hendricks v. Transp. Servs. of St. John*, 41 V.I. 21 (Terr. Ct. 1999) (passenger injured when he fell through an unsecured hatch while boarding a boat moored at Red Hook, St. Thomas).

[9] *See* Complaint at para. 29.

[10] *See generally Hargus v. Ferocious & Impetuous, LLC*, 840 F.3d 133, 136- 38 (3d. Cir. 2016); *Donnelly*, 605 F. Supp. 2d 613, 617 (stating that "many courts make the point that rescue efforts and after-accident investigations can lead to disruption of maritime commerce"); *Leach*, 2019 VI SUPER 110U at *19.

[11] *Hendricks*, 41 V.I. at 25.

compensation, establishing that this is precisely the type of activity that evinces a substantial relationship to traditional maritime activity and satisfies the second sub-requirement of the second prong. At this juncture, this Court cannot glean any reason not to conclude that this case sounds in admiralty law.

### ii.    Whether the Superior Court has Jurisdiction over an Admiralty or Maritime Cause of Action

¶ 7.    The next assessment requires a determination of whether this Court has jurisdiction over a cause of action that sounds in maritime or admiralty law. *To wit,* title 28, section 1333 of the United States Code provides that "the district courts shall have jurisdiction, exclusive of the courts of the States, of: (1) any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" (emphasis added).[12] *Offshore Logistics v. Tallentire,* 477 U.S. 207, 222- 23 (1986) explained that the "saving to suitors" clause allows litigants to pursue *in personam* maritime actions in state courts because they are competent to adjudicate such proceedings "so long as it does not attempt to give *in rem* remedies or make changes in substantive maritime law."[13] Thus, state courts are constrained by the "reverse-*Erie*" doctrine which requires that the state court use "substantive remedies afforded by the State but conform to the governing federal maritime standards."[14] Simply put, absent an express invocation of admiralty law by Plaintiffs, the saving-to-suitors clause permits a state court to entertain maritime causes of action only if it safeguards certain procedural rights and utilizes substantive local law that is not in conflict with maritime law.[15] Consequently, the saving-to-suitors clause

---

[12] 28 U.S.C.S. § 1333 (1948).

[13] *Offshore Logistics v. Tallentire,* 477 U.S. 207, 222- 23 (1986) (quoting *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 124 (1924)).

[14] *Id.* at 223.

[15] *See Hendricks v. Transp. Servs. of St. John,* 41 V.I. 21, 27- 28 (Terr. Ct. 1999) (holding that when admiralty law is not invoked, "both procedural and substantive maritime law is applied exclusively").

effectively preempts the case from removal to federal court and permits the plaintiff to retain common law right to a jury trial.[16] Thus, although this case sounds in admiralty law, by virtue of the saving-to-suitors clause, this Court is empowered to hear the case and has jurisdiction over it.

### iii.  Whether Local Law or Federal Maritime Law Applies

¶ 8.  The next inquiry for this Court concerns whether local law or federal maritime law is applicable. Courts must ensure uniformity in maritime law across all jurisdictions and "state law may supplement maritime law when maritime law is silent or where a local matter is at issue, but state law may not be applied where it would conflict with maritime law."[17] This is not a situation where applying Virgin Islands law would interfere with maritime law. Here, the elements of maritime negligence and common law negligence are one and the same. Much like local law, maritime negligence requires four (4) elements: 1.) that Defendant had a duty, 2.) that there was a breach of that duty, 3.) that Defendant actually and proximately caused the damages to Plaintiff, and 4.) that Plaintiff suffered actual injury or has damages.[18] Accordingly, this Court will apply Virgin Islands law to the maritime negligence claim. The same is applicable to the claims of loss of consortium and the negligent infliction of emotional distress. Because the elements of these claims are similar to federal law, there is no apparent reason why Virgin Islands law should not be applied. As such, this Court will apply Virgin Islands law to all the claims presented by Plaintiffs.

¶ 9.  Plaintiffs bring this cause of action pursuant to maritime negligence arguing that Defendant

---

[16] *See e.g. Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 443- 45, 454 (2001) (stating that "trial by jury is an obvious, but not exclusive, example of the remedies available to suitors"); *Leach v. Cruise Ship Excursions, Inc.*, 2019 VI SUPER 110U, at *15 (V.I. Super. Ct. 2019) ("the saving-to-suitors clause has been interpreted... as a means of preserving the role of state courts in administering common law remedies, such as a jury trial, in admiralty cases"); *Hendricks*, 41 V.I. at 28 n. 11.

[17] *Leach*, 2019 VI SUPER 110U, at *22 (citing *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1047 (3d Cir. 1988) and *Sosebee v Rath*, 893 F.2d 54, 56 (3d Cir. 1990)).

[18] *See Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 409 (V.I. 2016); *Machado v. Yacht Haven U.S.V.I.*, 61 V.I. 373, 380 (V.I. 2014).

improperly and negligently transported 12 passengers, thereby overloading the vessel, and in doing so, Defendant failed to take precautions to prevent Plaintiffs' reasonably foreseeable injuries.[19] Further, Plaintiffs argue that Defendants violated the Howard Coble Coast Guard and Maritime Transportation Act of 2014, section 319, "Uninspected Passenger Vessels in the United States Virgin Islands (referred to as the "Obama Era Amendment" by Plaintiffs), codified at 46 U.S.C.S. § 4105(b)(1)(A) (2014). The Act states:

> "(b)(1) In applying this title with respect to an uninspected vessel of less than 24 meters overall in length that carries passengers to or from a port in the United States Virgin Islands, the Secretary shall substitute '12 passengers' for '6 passengers' each place it appears in section 2101(42) if the Secretary determines that the vessel complies with, as applicable to the vessel—
>
> "(A) the Code of Practice for the Safety of Small Commercial Motor Vessels (commonly referred to as the 'Yellow Code'), as published by the U.K. Maritime and Coastguard Agency and in effect on January 1, 2014..."[20]

¶ 10.    This section, *inter alia*, has two (2) conditions: 1.) it permits a vessel of up to 80 feet to transport up to twelve (12) passengers, and 2.) it requires a certification of compliance.[21] Therefore, according to the statute, issuance of a certificate to operate comes after an inspection that determines the vessel is eligible to transport the safe number of passengers and an absence of the certificate is proof that the vessel was not in compliance with relevant regulation.[22] Meanwhile Defendant argues that because this case sounds in admiralty law, the seaworthiness of the vessel

---

[19] *See* Plaintiffs' Reply Brief, pp. 2-3.

[20] 46 U.S.C.S. § 4105(b)(1)(A) (2014).

[21] *See* Code of Practice for the Safety of Small Commercial Motor Vessels, Section 27.5 which governs the issuance of a certificate of compliance under the code. More specifically, section 27.5.5 states in relevant part that "upon satisfactory review of the documented arrangements, fittings and equipment provided in compliance with the Code, also the required declarations in the completed report form SCV2 and approval as appropriate of either the stability information booklet or required stability information, the Certifying Authority will issue the final full-term certificate."

[22] Plaintiffs' Motion in Limine, pp. 3-4.

is the proper cause of action and only seamen, not passengers, have standing to sue.[23] Thus, Plaintiffs cannot bring this cause of action against Defendant.

¶ 11. This Court is in agreement with Plaintiffs. Plaintiffs have set forth no claim of unseaworthiness as it asserts that it is not suing the *M/V Cuda* itself.[24] Much like the U.S. Supreme Court in *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959) found, this Court also finds that Plaintiffs' negligence claim is permissible and valid.[25] To this Court, the issue is whether Barracuda Charters was negligent in allowing more than six (6) passengers on the vessel that had not been inspected, much less certified by an authorizing body. As such, based on a literal reading of the statute and particularly in light of Defendant's failure to obtain the requisite certificate to demonstrate that they are indeed in compliance, Barracuda Charters should be precluded from asserting a claim based on the statute. Even more noteworthy, Defendant has yet to set forth a legitimate reason as to why it has not obtained the same certificate of compliance, the absence of which bars it from use at trial; thus, it remains an undisputed fact that Barracuda Charters lacks the certificate. Therefore, Defendant is prohibited from asserting a claim based on 46 U.S.C.S. § 4105(b)(1)(A).

## B. LIMITATION OF LIABILITY PROVISION ANALYSIS

¶ 12. In order to properly address the limitation of liability claim, a preliminary analysis of the interplay between the saving-to-suitors clause available to Plaintiffs and the application of the Limitation of Liability Act presented by Defendant is required.[26] The Limitation of Liability Act

---

[23] *See* Defendant's Opposition Brief, pp. 3-4.

[24] Plaintiffs' Reply Brief, p. 2.

[25] *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959) (ruling that "the owner of a ship in navigable waters owes to all who are on board... the duty of exercising reasonable care under the circumstances of each case.").

[26] *See generally Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448- 49 (2001) (citing *Langnes v. Green*, 282 U.S. 531 (1931)) (holding that the petitioner can proceed with his claim in state court and the federal court retains jurisdiction over the limitation of liability claim).

of 1851, codified at title 46, section 305 of the United States Code, sub-sections 30505 and 30506, provide that "without the privity or knowledge thereof of a maritime accident, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight."[27] Accordingly, in *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455- 56 (2001), the U.S. Supreme Court decided that a federal district court is divested of exclusive jurisdiction of a maritime claim in two situations, if the value of the limitation fund and/or the value of the vessel exceeds the value of the claim, and if there is only one claimant.[28] Plainly speaking, a district court and a state court can have concurrent jurisdiction of a case arising from the same operative facts; therefore, although a state court is competent to address all other claims pursuant to the saving-to-suitors clause, the federal district court retains jurisdiction of any claims arising under the Limitation Act.

¶ 13.    Nonetheless, the Court's analysis is two-fold. In its moving papers, Barracuda Charters claims that its liability should be capped at $114,300, the actual purchase price of the vessel.[29] It argues that even if the amount does not reflect the upgrades made to the vessel subsequent to its purchase or the fair market value, such an omission is not "grounds for striking the amount" but merely a matter that Plaintiffs can contest at trial.[30] However, the Shusters assert, that the valuation is based on an erroneous foundation as Defendant's marine liability expert, Thomas Danti,

---

[27] 46 U.S.C.S. §§ 30505 & 30506 (2006). *See also Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455- 56 (2001); *In re Complaint of B&C Seafood, LLC*, No. 18-1560, 2019 U.S. Dist. Lexis 213254, at *5 (D.N.J. Dec. 11, 2019); *In re Complaint of Weeks Marine, Inc.*, No. 18-16702, 2019 U.S. Dist. Lexis 91356, at *6 (D.N.J. May 31, 2019).
[28] *Lewis*, 531 U.S. at 455- 56. *See also Gorman v. Cerasia*, 2 F.3d 519, 524 (3d Cir. 1993); *In re Complaint of Weeks Marine, Inc.*, 2019 U.S. Dist. Lexis 91356, at *7-8.
[29] *See generally* Defendant's Opposition Brief, pp. 5-6.
[30] Defendant's Opposition Brief, p. 6.

admitted that: 1.) he is not a marine surveyor or valuation expert, 2.) his valuation was based on a 2015 marine survey, 3.) that was created by someone else, 4.) with whom he has not consulted (nor will be called as a witness), and 5.) that is now too old to be reliable.[31] In addition, Plaintiffs also contend that Defendant should not be privy to the benefits of the limitation of liability clause because Barracuda Charters failed to comply with the pre-requisites found in the statute.[32] Specifically, Plaintiffs maintain that Defendant's lack of compliance in producing a certificate for the *M/V Cuda* as required by the "Yellow Code" removes its right to assert the limitation of liability defense by virtue of the language contained in the statute itself.[33] Here as before, Plaintiffs are correct.

¶ 14.   This is the Court's first analysis. Irrespective of the provisions of the general limitation of liability clause, the introductory language of chapter 301 places liability squarely on the owner and master of a vessel. The opening section of this chapter, pursuant to section 30102, states in relevant part as follows:

> (a) Liability.   The owner and master of a vessel, and the vessel, are liable for personal injury to a passenger or damage to a passenger's baggage caused by—
> > (1) *A neglect or failure to comply with part B … of subtitle II of this title*; or
> > . . .
> (b) Not subject to limitation. *A liability imposed under this section is not subject to limitation under chapter 305 of this title.* (emphasis added).[34]

¶ 15.   Here, section 4105 is found in subtitle II, part B, of title 46 of the United States Code and the limitation of liability provision appears in subtitle III, chapter 305, section 30505 of the same

---

[31] Plaintiffs' Motion in Limine, p. 7.
[32] *See generally* Plaintiffs' Motion in Limine, pp. 5-6.
[33] *See* Plaintiffs' Motion in Limine, p. 6.
[34] 46 U.S.C.S. § 30102 (2006).

title 46.[35] These statutes must be read contextually and interpreted literally. Thus, as provided by the opening language of chapter 301, a failure to fully comply with section 4105, which appears in the preceding subtitle, renders the limitation of liability provision, found in the succeeding subtitle, inapplicable to Defendant. Consequently, because satisfaction of one statutory provision triggers an application of the benefits of the next statutory provision, Defendant cannot raise the Limitation Act as a defense. Defendant's failure to adhere to or comply with the provisions and requirements of section 4105 inherently leads to an unavailability of the Limitation Act to Defendant because it only follows, to this Court, that the duties and obligations contained in subtitle II have to be preliminarily satisfied before issues of liability found in the latter subtitle III can be adequately pursued. This Court finds that Barracuda Charters is estopped from invoking the Limitation of Liability Act as an affirmative defense and as a result, cannot introduce evidence regarding the value of the vessel because the certification requirement pursuant to section 4105 has not been satisfied.

¶ 16.    Accordingly, the Court's second analysis is as follows. Even if this Court were to find that the Limitation Act and its provisions are applicable to Defendant, based on the prior jurisdictional analysis conducted in accordance with title 28, section 1333 of the United States Code, this Court holds because the Limitation Act proceeds as an *in rem* action against the vessel itself, only the district courts have jurisdiction over such a matter.[36] Furthermore, a state court would otherwise be empowered to hear claims revolving around limitations of liability if: 1.) there is one single claimant, and 2.) the value of the vessel exceeds the amount of damages. Here, neither of these

---

[35] Subtitle II, part B broadly governs the "Inspection and Regulation of Vessel while Subtitle III oversees "Maritime Liability."

[36] *See supra* fn. 14-15. *See also Lewis*, 531 U.S. at 453- 54.

exceptions are met, so, the district court still retains jurisdiction.[37] Thus, by reconciling Plaintiffs' right to remedy under the saving-to-suitors clause with Defendant's right to seek a limitation of liability under the Limitation Act, this Court finds that it is devoid of jurisdiction to hear the issue concerning limitation to liability. Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motion in Limine is **GRANTED**, in its entirety; and it is hereby

**ORDERED** that a copy of this Order shall be directed to Joel H. Holt, Esquire, Julie German Evert, Esquire, Matthew J. Duensing, Esquire, and Joseph D. Sauerwein, Esquire.

Dated: January 22, 2020

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Estrella H. George
Clerk of the Court

By:
Lori Boynes-Tyson
Chief Deputy Clerk

1/22/2020

---

[37] *See* fn. 28. *Lewis*, 531 U.S. at 442 (finding that there are "two exceptions to exclusive federal jurisdiction under which a claimant is allowed to litigate his claim in state court. The first is where the value of the limitation fund exceeds the total value of all claims asserted against the vessel owner. The second is where a single claimant brings an action against the vessel owner seeking damages in excess of the value of the vessel.").